HOME SAVINGS-BANK, Respondent, *v.* E. TRAUBE ET AL., Appellants.

November 19, 1878.

1. Any one aggrieved may appeal from a final judgment without the concurrence of his co-parties to the suit.

2. Where exceptions to the report of a referee have been overruled, a motion for a rehearing may be filed, and has the effect of suspending the judgment until its decision.

3. Sureties on the bond of the book-keeper of a bank are discharged when the bank, without the sureties' consent, employs the book-keeper as teller also; and it is immaterial whether the employee's acts which caused the bank's loss were done as book-keeper or as teller.

4. To accept a surety who is in ignorance of unusual circumstances which increase his risk, while he who thus accepts him knows of such circumstances and withholds the knowledge from the surety, is a legal fraud which discharges the surety.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

BROADHEAD, SLAYBACK & HAEUSSLER, for appellants: Where a motion for rehearing has been filed after exceptions to the referee's report have been overruled, an appeal will not lie until the motion is disposed of. — *City* v. *Brown*, 4 Otto, 415; 3 Otto, 412. Plaintiff cannot by his proof make out a different cause of action from that set out in his petition. — *Merle* v. *Hascall*, 10 Mo. 406; *Murphy* v. *Wilson*, 44 Mo. 313; *Jones* v. *Louderman*, 39 Mo. 287. The risks imposed by plaintiff upon the sureties without their knowledge or consent, and beyond the scope of the ordinary employments of a book-keeper, so altered the risks contemplated by them at the entrance into their obligation, that their liability upon the bond was wholly discharged. — *City of St. Louis* v. *Sickle*, 52 Mo. 122; *Blair* v. *Perpetual Ins. Co.*, 10 Mo. 560; *The State to use* v. *Boon*, 44 Mo. 262; *Cochrane* v. *Stewart*, 63 Mo. 428; *The State to use* v. *Thomas*, 19 Mo. 616; *Allison* v. *Bank*, 6 Rand. 204; *Nolley* v. *Callaway County*, 11 Mo. 463; *Bowmaker* v. *Moore*, 7 Price, 231; *Miller* v. *Stewart*, 9 Wheat. 680; *Dedham* v. *Chickering*, 4 Pick. 317; *The State to use* v. *Sandusky*, 46 Mo. 381; *Bonar* v. *MacDonald*, 3 H. L. Cas. 226; *Whitcher* v. *Hall*, 8 Dow. & Ry. 27; *Smith* v. *United States*, 2 Wall. 233; *McMicken* v. *Webb*, 6 How. 296; *Leggett* v. *Humphreys*, 21 How. 76; *United States* v. *Boyd*, 15 Pet. 208. " To receive a surety known to be acting upon the belief that there are no unusual circumstances by which his risk will be materially increased, well knowing that there are such circumstances, and having reasonable opportunity to make them known, is a legal fraud by which the surety will be relieved from the contract."—*Franklin Bank* v. *Cooper*, 36 Me. 179; 37 Me. 542; *Evans* v. *Bremridge*, 2 Kay & J. 174; *Pidcock* v. *Bishop*, 3 Barn. & Cress. 605.

PATTISON & DOOLEY, for respondent: All the parties against whom judgment was rendered must join in the ap-

peal, or the proper steps taken to procure a severance. — Wag. Stats. 1064, 1065, sects. 5–13 ; *Clifton* v. *Shelton*, 23 How. 481 ; *Hicks* v. *Gilliam*, 4 Dev. 217 ; *Moore* v. *Mc-Guire*, 26 Ala. 463 ; *Lovejoy* v. *Irelan*, 17 Md. 525 ; *Cumberland* v. *Jeffries*, 21 Md. 375.—A motion for a rehearing filed after exceptions to the referee's report have been overruled will not have the effect of suspending the judgment until its decision. — 48 Mo. 37 ; *Smith* v. *Crease*, 2 Mo. App. 278 ; *Foster* v. *Mackey*, 4 Mo. App. 590 ; *The State ex rel.* v. *Wickham*, 3 Mo. App. 604. The sureties under the bond in question were not discharged by the additional employment of the book-keeper as teller. — *Rochester Bank* v. *Elwood*, 21 N. Y. 88.

BAKEWELL, J., delivered the opinion of the court.

This action is upon a bond given by one Rodel as principal and the defendants as sureties, dated May 30, 1867. The penalty of the bond is $5,000, and it is conditioned that, whereas Rodel has been by the board of directors of the Home Savings-Bank of St. Louis appointed book-keeper of said bank, and whereas said Rodel may from time to time by the said board of directors be continued and reappointed book-keeper of said bank, "now, if the said Emil G. Rodel shall well and truly and faithfully perform the duties of book-keeper of said bank for and during all the time he shall hold such office of book-keeper of said bank, and for and during all the time he may continue or act as such book-keeper of said bank, whether under the present appointment or until further reappointment, and shall and will well and truly and faithfully account for and render over to said bank all such money, goods, chattels, and other effects and things as may come into his possession or under his care or charge while in the service of said bank as such book-keeper, either under the present appointment or a future reappointment, and shall, while he continues in such service, either under the present

appointment or any future reappointments, faithfully, and to the best of his ability, perform all trusts reposed in him, and all duties devolved on him by the laws of the land, or by any by-law, rule, order, or resolution of said board now existing or hereafter made, enacted, or adopted, not inconsistent with the laws of the land, then this obligation to be void; otherwise to remain in force.''

The petition alleges that Rodel was on May 30, 1867, the book-keeper of plaintiff, and continued to be such book-keeper from that date until August 1, 1872.

The breaches of the bond for which a recovery is sought are assigned as follows : —

'' Plaintiff says that said Rodel did not well and truly and faithfully perform the duties of book-keeper as aforesaid, and that he did not to the best of his ability perform all the trusts reposed in him, and all the duties devolved on him by the by-laws, rules, orders, and resolutions of the board of directors of plaintiff; but that, on the contrary, he did, while in the service of said bank, falsely enter in the books thereof, on many different occasions, certain sums of money as paid out by said bank, which had never in fact been paid out, and also neglected and failed to enter in said books certain sums which had been paid into said bank and which should have been so entered. Also that he did, on many occasions, fail and neglect to enter in the said books various payments· of money made, and of sums received by said bank, and that he did, on many occasions, make erroneous and incorrect entries on said books.

'' Plaintiff says that by reason of said false, erroneous, and incorrect entries made as aforesaid by said Rodel, and by reason of his failure and neglect to make entries of payments made by, or money received by, plaintiff, plaintiff has been damaged in the sum of five thousand dollars. And plaintiff further states that said Rodel did not well, truly, and faithfully account for, and render over to said bank, all moneys that came into his possession and under his care

and charge while in the service of said bank as said book-keeper; but that he did falsely, fraudulently, and without authority, retain and convert to his own use, of the moneys belonging to said bank and coming into his possession or under his care and charge, the sum of five thousand dollars."

And the plaintiff asks judgment for $5,000.

The answer avers that Rodel was appointed only for one year, and was not afterwards reappointed; and says that there was no breach of the condition of the bond during the first year; that afterwards the duties of teller were imposed on Rodel by plaintiff, without the knowledge or consent of the sureties; that the duties of teller are more difficult and onerous than those of a book-keeper, and that the discharge of these duties by Rodel exposed him to a greater temptation; and that defendants are therefore discharged, there being a variance from the contract. The replication denies that the duties of Rodel were changed.

On motion of plaintiff, supported by affidavit showing that the trial of the cause involved the investigation of a long account, the cause was, against the objection of defendants, referred to a referee to try the issues and report. The facts found by the referee cannot be more succinctly stated than they are in his own language, in his report, as follows: —

"I find from the evidence offered in this case that the plaintiff appointed Rodel as its book-keeper on the fifth day of June, 1867, and that the bond in suit was given to plaintiff July 22, 1867; that plaintiff did not employ said Rodel on the recommendation of the defendants, or at their request; I find that the defendants were each of them acquainted with the duties and services ordinarily required and imposed upon the book-keeper of a bank, and that during the whole period of Rodel's service with plaintiff the defendants had no information or notice that he was employed in any capacity by plaintiff except

as its book-keeper. I find that during the time of the alleged breaches of the bond by Rodel the plaintiff employed and used him as its teller, in which capacity he received and paid out the moneys of the plaintiff. I find that the ordinary duties of the book-keeper of a bank do not require him to handle or have charge of any money, and that the ordinary duties of a teller of a bank require him to handle all the money; in other words, that as book-keeper Rodel handled no money of plaintiffs, while as teller he handled it all; and that as teller he was afforded opportunities and exposed to temptation to take and appropriate to himself the moneys of plaintiff, which were not afforded him as book-keeper, but that his latter employment did afford him facilities for hiding his defalcations as teller by false entries in the books. I find also, that the duties of bank's teller are much more responsible, and a larger bond is required of him than in case of the book-keeper.

" The losses sustained by the plaintiff by the reason of the errors and misconduct of Rodel consist of (1) losses by his act as book-keeper and (2) losses by his act as book-keeper and teller. Upon the application of the defendants, I required the plaintiff to show an account of the losses claimed to have been sustained by it by the acts of Rodel; and the plaintiff produced a statement of such losses, which is herewith returned.

" The evidence before me has been directed to the items of this statement.

" It is contended by the plaintiff that the language of the bond is comprehensive enough to cover, and does substantially cover, all losses sustained by plaintiff by reason of Rodel's acts in his employment as teller and book-keeper.

" The defendants contend, on the other hand, that the employment of Rodel by plaintiff in the capacity of teller, without notice to them, was such an increase of the responsibilities of their principal, and a corresponding increase of

their risk, above what was contemplated by the bond, as to discharge them from all liability upon its obligation. The objection that the undertaking was for one year only has not been insisted upon, and I think is not tenable. With regard to plaintiff's position, I have concluded, without much difficulty, that the language of the bond cannot be fairly held to contemplate any employment of Rodel by the plaintiff except in the legitimate and ordinary duties of book-keeper, and that the securities would not by the bond, by its terms, be apprised by any other service or employment than the particular service of book-keeper, and consequently cannot be held to answer here for any acts of their principal except his acts as book-keeper alone. To the extent mentioned, — that is, in so far as Rodel's acts as book-keeper are involved here, — I think the bond effectual, and binds the defendants to make the losses good within the penalty.

" The assessment of the damages under this rule is attended with considerable difficulty, inasmuch as, acting as Rodel did, in the double capacity of book-keeper and teller, it is in many instances difficult, from the evidence, to determine in which capacity he inflicted upon plaintiff the actual loss.

" The conclusion I have reached is, that only in those instances when Rodel failed to properly enter in the bank's books moneys paid out by the plaintiff, so that the bank was caused thereby to pay the money out again, can it with certainty be assumed that the plaintiff lost by Rodel's act as mere book-keeper.

" In the instances last mentioned, I charge the securities, the defendants here, and hold that the plaintiff is not under any duty to first proceed against the party who, by the mistake, has received his money twice.

" On the basis above stated, the losses by act of the book-keeper I find to be as follows :" Then follow twelve items, amounting altogether to $6,483.87.

The referee further states that by Rodel's failure to carry

up these entries of payment upon the ledger, which is the book by which plaintiff settled with and paid its customers, the amount was paid a second time, and that this was exclusively the error of the book-keeper. He finds that defendants are entitled to no offset to these items, and finds for plaintiff in $5,000, the penalty of the bond.

Exceptions were duly filed to this report, and were overruled; and at the same term a motion for a rehearing was filed, which was overruled at the next term; and defendant Bircher appeals.

1. It is contended by respondent that one of the defendants cannot appeal without joining another, unless the proper steps have been taken to obtain a severance. This raised the question whether the common-law practice as to writs of error, which is also the practice prescribed by statute in this State (Wag. Stats. 1064 *et seq.*), is to be followed in case of appeal under the Practice Act.

The Practice Act provides that " every person aggrieved by any final judgment  *  *.  *  may make his appeal;" and it contains no provision similar to that in regard to writs of error, where it is provided that all persons living, and entitled to bring the writ, must join. Nor does it provide for a severance in a case of appeal. To say that the privilege of appeal is denied unless both join would, work injustice. Cases may arise in which only one defendant is aggrieved by the judgment, as where the action is for a tort. Both the language and the spirit of the Code seem to support the view that any one aggrieved may appeal, whether his co-defendants join in the appeal or not. This construction has been put upon our Code by the universal practice in this State since its adoption. And such is the practice in New York under a similar code. We are of opinion that any one of several parties, though on the same side, may appeal without the concurrence of his co-parties. *Mattison* v. *Jones*, 9 How. Pr. 153; 4 E. D. Smith, 27; *Peer* v. *Cockeran*, 1 McCart. 361.

2. Respondent claims that the exceptions to a referee's

report fulfil the office of a motion for a new trial, and that, when these are overruled, the bill of exceptions must be perfected at the same term ; that to file a motion for a rehearing is as futile as to ask for a rehearing of a motion for new trial; and that such a motion does not suspend the judgment until its decision.

The chief object of the motion for a new trial is that the attention of the trial court being expressly called to all exceptions taken to its action, an opportunity may be afforded for more careful examination and more mature deliberation, that errors may be corrected and new trials awarded, in many cases, without the delay and expense attendant upon an appeal. *The State* v. *Marshall*, 36 Mo.— Whether such a motion is necessary in case of a new trial by a referee, where the case has been referred to him to try all the issues, and where exceptions to his report have been passed upon by the court, is a question which it might be interesting to discuss, did we consider the matter *res integra* in this State. The practice has been to file such a motion ; and to hold now that it does not suspend the judgment, and that, where it is continued to the next term by the court, the party making the motion is to lose all benefit of his appeal by being deprived of his bill of exceptions, would be to unsettle the practice as to a matter of mere form in a way which could accomplish no good, and might work great injustice.

3. The disposal of these points brings us to the consideration of the merits of the case.

The law on the subject of sureties is, that the surety will not be held liable where the risk is increased by the act of the party to whose benefit the suretyship is intended to enure. If the duties which the principal is to perform are varied by agreement between the principal and the obligee after the bond is executed, the surety will, as a general rule, be discharged.

A. agreed to do certain work for a company within a

year, for a fixed sum, to be paid in instalments every two months, of two-thirds of the value of the work done, and the remainder within one month from the completion of the whole. It was held that the company, by making advances to A., from time to time, beyond two-thirds of the value of the work done, without the assent of the sureties for the performance of the agreement by A., had thereby discharged the sureties from their liability. *Calvert* v. *London Dock Co.*, 2 Jur. 62 (1839). "The effect of the reserve of one-third of the value of the work," says Lord Langdale, Master of the Rolls, "was to urge A. to perform the works, and to leave a fund which might have made it easy to complete them. The company, by their conduct, took away the great inducement to A. to perform his contract, and so far altered the relation that the sureties must be considered to have been discharged from their liability."

So where a bond was entered into, the condition of which recited that the North-Western Railway Company had appointed W. their agent to sell coal at a salary of £100 per annum, conditioned that W. should duly account and for his honest conduct; afterwards the principal in the bond was allowed a commission of so much a ton in lieu of a salary, of which the sureties had no notice. W. proved a defaulter, and the sureties were sued on their bond. It was held that the change in the remuneration released the sureties. "The change," says Platt, B., "imposed on the surety a risk he never undertook to bear. The surety's bargain was that the clerk was to have the salary, the more certainly to be able to resist temptation." *North-Western R. Co.* v. *Whinsay*, 26 Eng. Law & Eq. 492; 10 Exch. 81.

*Miller* v. *Stewart*, 9 Wheat. 680, is a case often cited to the point that the liability of the surety is not to be extended beyond the express terms of his contract. In that case the bond was conditioned for the faithful performance of the duties of deputy-collector of eight certain townships. Afterwards the instrument of appointment of the deputy

was altered so as to include a ninth township ; this was held to be a complete discharge of the sureties. " This class of cases, where persons have been bound for the good conduct of clerks of merchants and other persons," says Judge Story, delivering the opinion of the court, " the whole series of them, from *Lord Arlington* v. *Merrick*, 2 Saund., to *Pearsall* v. *Summersett*, 4 Taun., proceed upon the ground that the undertaking of the surety is to receive a strict interpretation, and not to be extended beyond the fair scope of its terms."

In the *Bank of Upper Canada* v. *Covert*, 5 Upper Canada Q. B. 541, it was held that the surety for the performance of the office of bank-agent is not responsible for losses occurring after the nature of the agency has been changed and the agent appointed cashier, because the responsibility was different, though in some respects lighter ; and that, though the bank might have exacted all the same duties of the officer without changing his name or office.

The sureties on a cashier's bond are exonerated by an increase of the capital stock of the bank after the making of the bond. *Grocer's Bank* v. *Kingman*, 16 Gray, 474.

Where one became surety for the conduct of a clerk of a bank, and where the clerk was appointed to a teller's situation in the bank, the surety extended his suretyship to this new situation, and the clerk, whilst remaining in the same situation, undertook, on having his salary raised, to become liable for one-fourth of the losses on discounts, and this was not made known to the surety, it was held that the surety was discharged on account of the variance, though the original agreement was that on which the liability was substantially incurred, the loss being occasioned by permitting a customer to overdraw. *Bonar* v. *MacDonald*, 3 H. L. Cas. 226.

To accept a surety known to be acting on a belief that there are no unusual circumstances by which his risk is materially increased, whilst the party thus accepting him

knows that there are such circumstances and withholds the knowledge from the surety, is a legal fraud by which the surety is discharged. *Franklin Bank* v. *Cooper*, 36 Me. 180; *Dougherty* v. *Savage*, 26 Conn. 156.

If these principles are applied to the facts of the case found by the referee, and fully supported by the evidence in this case, it would seem that defendant is not liable for the losses occasioned to the bank by the misconduct of Rodel, whether the immediate cause of the loss was his misconduct as teller or his misconduct as book-keeper. His temptation was increased by his appointment as teller; and the risk of the sureties was increased. The engagement between himself and the bank was changed after the bond was signed, or else it never was that which was represented to the sureties. They engaged to become sureties for a book-keeper, not for one who was both book-keeper and teller; and no power of man can alter their engagement. It may well be that those who consented to become sureties for a bank book-keeper might have refused to assume the obligation had they known that he was to be the teller of the bank as well. The undertaking of a surety is a dangerous one at best, and the courts, whilst they apply to its interpretation the rules applicable to other contracts, having by a fair interpretation defined the limits, will not suffer those limits to be extended a hair's breadth.

Our attention is directed by counsel for respondent to the case of *Rochester Bank* v. *Elwood*, 21 N. Y. 88, decided by the Court of Appeals in New York in 1860. The point decided in that case is not in contradiction with the views expressed in this opinion; and the reasoning of the court, so far as it applies at all, rather sustains them. That was a case in which the bond was conditioned for the faithful discharge by one of the obligors, of " the trust reposed in him as assistant book-keeper of a bank." He embezzled some of the bank's money, and made fraudulent entries to avoid detection. These fraudulent entries were made by him

whilst employed in keeping a journal which, when he entered upon his duties, and usually, was kept by the teller. The plaintiff was nonsuited at the circuit, on the ground that Gold, the principal in the bond, was acting as teller, and not as assistant book-keeper, in making these false entries in the journal; and the decision was affirmed at General Term, on the ground, *first,* that the wrongful taking of the money by Gold was no breach of the bond of the surety, as he had covenanted only that Gold would faithfully discharge the duties of an assistant book-keeper; and, *second,* though the making of the false entries on the books of the bank might technically sustain the action, yet, as no loss resulted as a consequence of those entries, the plaintiff would be only entitled to nominal damages, and a new trial should not be granted for that purpose. But the Court of Appeals reversed the court below, holding that this was a wrong construction of the contract of the surety. It held, contrary to the ruling of the same point in Virginia (*Allison* v. *Bank,* 6 Rand. 204), that the covenant that Gold should " faithfully discharge the trust reposed in him as assistant book-keeper " included within its scope and intention an engagement that the employee would not transcend the limits of the trust reposed, in availing himself of his position as book-keeper to embezzle his employer's funds. To discharge the duty of book-keeper, Gold was necessarily introduced behind the counter of the bank, and the contract indicated the department of duty assigned, and guaranteed that Gold was a trustworthy person to discharge that duty.

Whatever may be said of the ruling in *Rochester Bank* v. *Elwood,* it is plainly aside from the point involved in the case at bar. The court there considers that the bond indicated the department of duty assigned to Gold to be that of a book-keeper; that making entries in the credit-journal was book-keeping, and was within the range of the class of duties that might appropriately be assigned to an assistant book-keeper. " We are not informed," say the court, " what

books were assigned to Gold to keep when he entered the bank; but is not the idea an absurd one that the managers of the bank could not assign to him the keeping of another book without releasing the surety from his obligation? In keeping the credit-journal, Gold had nothing to do with receiving and counting the cash. All that he had to do was to make entries in the journal of cash receipts, from slips furnished by the cashier or teller. He had nothing to do with receiving money, and he was no better able to abstract it from the drawers or vaults of the bank than though he had been confined to making entries in the ledger or the other books of the corporation." He was still merely a book-keeper.

In the case at bar, the principal obligor in the bond was engaged for a special department of duty, indicated in the bond itself, and was employed without the knowledge of the sureties in a quite different department, by which his responsibilities were increased, and he was exposed to temptation from which he would otherwise have been free. The sureties engaged for the faithful discharge of the duties of book-keeper, not for the discharge of the duties of book-keeper and teller; and if, being employed in this double capacity without their knowledge or consent, Rodel made false entries in the books of the bank, by which erroneous payments of money made by him as teller were concealed, or in consequence of which they were made, whether the loss to the bank was caused by the wrong-doing of Rodel as book-keeper or by his wrong-doing as teller is immaterial for the purposes of this action. In neither case can the sureties of Rodel be held, because to hold them liable for the faithful discharge of his duties by one who is book-keeper and teller of a bank, when their agreement was to be responsible for the faithful discharge of his duties to the bank as book-keeper, would be to substitute a new agreement for the one that the sureties actually made. The referee in this case has found that the office of book-keeper and teller are

quite distinct, and that the duties of a bank-teller are much more responsible than those of a book-keeper, and that, of the teller, a larger bond is required.  The change imposed on the sureties a risk which they never undertook to bear, and in our judgment exonerated them from liability upon the bond.

The judgment of the Circuit Court is reversed and the cause remanded.   All the judges concur.