### CHICAGO TERMINAL TRANSFER R. CO. v. STONE.

(Circuit Court of Appeals, Seventh Circuit. June 12, 1902.)

No. 836.

1. INJURY TO SERVANTS—CAR REPAIRERS—NEGLIGENCE—QUESTION FOR JURY.
   3 Burns' Rev. St. Ind. 1894, § 7083, declares that railroad corporations shall be liable for injuries suffered by employés while in its service, such employé being in the exercise of due care, where such injury was caused by the negligence of any person in the service of such corporation, who had charge of any locomotive, engine, or train, or where such injury was caused by the negligence of any person, co-employé, or fellow servant at the time acting in the place and performing the duty of the corporation in that behalf. *Held,* that where an engine was sent out in charge of a young "hostler" to switch certain cars, with no helper in the cab, and with a workman from the shops to serve as a switchman, and the train was backed to a switch where certain cars to be repaired had been left standing, bearing a red flag in plain view, which denoted that repairers were at work on the cars, and, though the engineer noticed that the cars were "pretty close" to his track, and brought the train to a stop within a short distance of the danger point, he continued to back in response to a signal from such switchman, without looking to ascertain the safety of his act, by reason of which the cars on the repair track were put in motion, and plaintiff's intestate, a car repairer at work under the cars, was killed, there was no error in refusing to direct a verdict for the defendant and submitting the case to the jury.

2. APPEAL—INSTRUCTIONS—EXCEPTIONS AT TRIAL.
   Where no exceptions were taken to instructions given at the trial, and no instructions were requested, the instructions so given cannot be reviewed on appeal.

3. INJURY TO EMPLOYE—CONTRIBUTORY NEGLIGENCE.
   Plaintiff's decedent, a car repairer, was ordered to repair certain cars which had been placed on a repair track by the company's yard foreman, and a red flag was placed on the end car to indicate that car repairers were at work under the cars. The cars were struck by another train

on another track, by reason of their being too close to the switch to clear, and deceased was killed. *Held*, that deceased was not guilty of contributory negligence.

**4. EVIDENCE—VARIANCE—VERDICT.**

Where testimony is received without objection, a verdict founded upon it will not be disturbed, though the evidence is not strictly within the allegations of the complaint, since the pleading could be amended to conform to the proof.

**5. APPEAL—OBJECTIONS TO EVIDENCE.**

The admission of evidence at the trial cannot be reviewed on appeal, in the absence of objections interposed at the time the evidence is offered.

**6. EVIDENCE—RES GESTÆ.**

In an action for the death of a car repairer, caused by the alleged negligence of a roundhouse "hostler," sent out in charge of a switch engine, without a fireman, an interrogatory, on cross-examination, as to who sent the witness out without a fireman, was admissible as part of the res gestæ.

In Error to the Circuit Court of the United States for the District of Indiana.

The defendant in error was the plaintiff below, and recovered judgment upon a verdict against Chicago Terminal Transfer Railroad Company, plaintiff in error and defendant below (hereinafter mentioned as the defendant), in an action founded upon the alleged negligence of the defendant in switching operations, whereby the decedent, Leonard Vanderhere, received injuries which caused his death. The complaint alleges that the decedent was a car repairer in the service of the defendant, and that his injuries were received while "actually engaged in repairing cars upon said company's yard tracks, under the direction and orders of said defendant's foreman, then and there in charge of said yards and roundhouse," and thus states the cause of injury: "That upon said 28th day of March, 1900, while said decedent was then and there under one of said cars, and was then and there engaged in repairing the same, the said defendant company, by and through its servants, who were then and there in the service of said defendant corporation, and then and there had charge of and control of a locomotive engine and train upon said railroad, carelessly and negligently ran said locomotive engine and train of cars against the line or string of cars then and there located upon said side track or repair track, one of which string or line of cars was then and there being repaired by said decedent as aforesaid, and then and there and thereby carelessly and negligently pushed and knocked said car, under which said decedent was then and there at work, down upon said decedent, and then and there wounded, bruised, lacerated, and injured the head, trunk, and limbs, and the bones, muscles, flesh, tendons, ligaments, veins, arteries, nerves, and organs, of said decedent's body, to such an extent and in such manner as then and there to kill and cause the death of said decedent. That the said engineer and the said Leonard Vanderhere, decedent, were then and there both acting in the line of their respective duties as employés of said defendant company." An amended complaint was tendered before the close of the trial, alleging negligence on the part of the switchman in conformity with the evidence, but was disallowed by the court on the ground that the original "allegations were broad enough to cover it."

A statute of Indiana (section 7083, 3 Burns' Ann. St. 1894) provides that such corporations "shall be liable in damages for personal injury suffered by any employé while in its service, the employé so injured being in the exercise of due care and diligence," in certain cases stated, including the following: "(4) Where such injury was caused by the negligence of any person in the service of such corporation who has charge of any signal, telegraph office, switch yard, shop, round-house, locomotive engine or train upon a railway, or where such injury was caused by the negligence of any person, co-employé or fellow servant engaged in the same common service in any of the several departments of the service of any such corporation,

the said person, co-employé, or fellow servant, at the time acting in the place and performing the duty of the corporation in that behalf, and the person so injured, obeying or conforming to the order of some superior at the time of such injury, having authority to direct; but nothing herein shall be construed to abridge the liability of the corporation under existing laws."

Jesse B. Barton, for plaintiff in error.

James W. Noel and A. F. Knotts, for defendant in error.

Before JENKINS and GROSSCUP, Circuit Judges, and SEAMAN, District Judge.

SEAMAN, District Judge (after stating the facts as above). The assignment of errors, though varied in form, presents two questions only for review: Whether the trial court erred (1) in refusing to direct a verdict for the defendant, or (2) in overruling an objection to testimony brought out on the cross-examination of the witness Larson, called by the defendant.

1. The fact that Leonard Vanderhere, the decedent, received the injury from which he died while engaged in the line of duty as car repairer in the defendant's service, and the circumstances under which such injury occurred, are substantially undisputed. The injury arose in Indiana, and was caused by the alleged negligence of one or more "persons in the service of such corporation,"—that is, by failure to exercise the care and skill which the circumstances and nature of the service demanded,—and the case is subject to the provisions of the Indiana statute above stated. If the alleged cause of action is established by competent testimony and within the terms of this statute, it is plain that the peremptory instruction requested on behalf of the defendant was rightly denied. The injury in question occurred under the following circumstances:

The foreman of yards and repairs had set out a string of eight gondola cars to be repaired, on an east and west track used for that purpose, called in the testimony the "Sand-House Track." At the east end of this track was the switch which connected with the track adjoining on the south, referred to as a "Repair Track." Directed by this foreman, Vanderhere, the decedent,—who is designated by the foreman as "helper," because he had served with the company two weeks only,—proceeded with Stone, another car repairer, to repair these cars, commencing at the eastern end of the string. For this purpose Stone was ordered to separate the four eastmost cars, and he pushed them with a pinch bar eastward so that the first car was placed too near the switch for clearance, as the result proved. Such location was examined by the foreman, and if he did not give his approval in terms, as stated by Stone, the foreman testified that he was satisfied it would not foul with cars switching to the "repair track," and so left it. No measurements were taken, nor were the customary tests made to assure that fact. Vanderhere was not present when the cars were separated or moved, and neither observed their location with reference to the switch nor overheard any remarks thereon, but assisted only in the repair work. A red flag was in place on the east car to give the customary notice that car repairers were working on or under the cars. With the cars so standing on the track, and

the danger signal well displayed, both car repairers were at work under or between the third and fourth cars, out of view of the approaching danger, when the first car was struck on its corner by a train backing through the switch westward to the "repair track"; and this in broad daylight, with no obstruction to the view from the east except that made by the on-coming train. Impetus was thus given to the standing cars, without warning to the workmen, and caused the fatal injury of Vanderhere; Stone being thrown under the car, but escaping serious hurt.

The train so striking the standing car consisted of a backing engine, pushing a steam shovel car and a flat car loaded with a derrick and other material, and was moving in compliance with a signal given by one Williams, who was sent by the roundhouse foreman to serve as switchman with the acting engineer, Larson, in moving these cars and equipments to the "repair track." Williams was a boiler maker, but had some experience in switching; Larson, whom the foreman sent in charge of the engine, was not an engineer, but an employé in the roundhouse, known as "hostler," and had frequently served in taking out engines and moving cars, though only 20 years of age. On the occasion in question no fireman or helper was furnished Larson, who was alone on the engine. To reach the "repair track," after taking up the cars and their equipments, the train backed westward in the direction of the switch, Williams throwing the switch and signaling the movement. Both Williams and Larson observed the cars standing on the "sandhouse track," and, while Larson is uncertain in his testimony whether he noticed the flag, he says:

"I saw it [the standing car] was pretty close, but I was sure, if the switchman would see that the cars wasn't going to clear," he would "signal to come out."

Williams was on the ground, but was uncertain of clearing,—the difficulty of estimating the safety of movement being increased by a slight curve in the track,—and gave the signal to stop, and the train was stopped within about three car lengths of the standing car. Another examination seems to have satisfied Williams that the train could pass, and he signaled to start; but the movement thereupon quickly indicated danger, and he made confused effort to so signal, but not in time to avert the disaster. Larson testifies that he did not observe that the car fouled his track when he resumed backing in obedience to the signal, for the reason that his station as engineer was on the right-hand (south) side of the engine, and his train intercepted the view, though an unobstructed view was obtainable, as he states, from the north side. Undoubtedly, with a fireman or helper in the cab, to serve as lookout on the other side, as customary in switching operations, the engineer would attend only to that duty on his side, and when left alone on the engine he could not perform for both while running. But the question whether reasonable care is exercised depends for solution in each case on the circumstances, and in the present instance involves these special conditions: That the engine was sent out to switch the cars in charge of a young "hostler," with no helper in the cab, and a workman from the shops to serve as switchman; that the train was backed to the switch when the

standing cars bearing a red flag were in plain view, and when the engineer had noticed that the first "car was pretty close" to his track; that, brought to a stop within a short distance of the danger point, with the acting switchman evidently hesitating as to safe clearance, he obeyed the signal to resume backing, under no stress of emergency, and without looking to ascertain the safety of such move from a viewpoint which was seemingly equal, if not superior, to that of the switchman.

On this state of facts we are of opinion that no tenable ground was presented for directing a verdict in favor of the defendant, and that the only issues arising thereupon were issues of fact,—including legitimate inference of fact from the undisputed circumstances,—and were for the jury to determine, under proper instructions defining the negligence for which liability was imposed by the statute, and the rule and burden of proof in respect of contributory negligence or "the exercise of due care and diligence" on the part of the injured person. Instructions which were given in submitting the case to the jury are preserved in the bill of exceptions; but they are not reviewable, in whole or in part, for the reason that no exceptions thereto were taken on behalf of the defendant, nor were any instructions requested other than the request to direct a verdict for the defendant. The contention that contributory negligence appears on the part of the decedent is wholly unsupported by the testimony. On the main issue of negligence in backing the train which caused the injury, the testimony is undisputed, and, to say the least, clearly tends to establish negligence therein. It was properly left to the jury to ascertain whether any person in charge of the locomotive or train, who thus became the representative of the defendant within the terms of the statute, caused the injury "by carelessness and negligence in running and operating," one or both, and their finding is, in effect, that there was negligence on the part of a servant so in charge.

Upon the assumption that the issue was narrowed by the allegations of the original complaint to negligence on the part of the engineer, as contended on behalf of the defendant, the verdict is supported by testimony from which it is fairly inferable. But it is not necessary to rest the finding on negligence alone of the young man acting as engineer, nor is it just to leave it so implied, in the light of the testimony concerning the relation of the acting switchman to the train and his mistake in giving the signal to move. This testimony was received without objection, and, if not strictly within the allegations of negligence in the complaint, an amendment was proper to conform the pleading to the proof so received; but without an amendment "a verdict founded upon it will be sustained." Graves v. State, 121 Ind. 357, 23 N. E. 155, and authorities cited; Railway Co. v. Shanks, 132 Ind. 395, 31 N. E. 1111. See Roberts v. Graham, 6 Wall. 578, 581, 18 L. Ed. 791; Railroad Co. v. O'Reilly, 158 U. S. 334, 335, 15 Sup. Ct. 830, 39 L. Ed. 1006. In the present case, however, an amended complaint was duly tendered for that purpose, and was ruled out by the trial court on the ground that the original allegations were sufficient. Assuming (but not intimating) that this ruling was erroneous, it was in no sense harmful to the defendant, and cannot affect the judgment.

In any aspect of the testimony, no error was committed in refusing to direct a verdict for the defendant.

2. The remaining assignment of error, based on the cross-examination of the witness Larson, the engineer, called on behalf of the defendant, is without merit. The assignment recites several questions and answers as objectionable matter; but it appears from the bill of exceptions that all were admitted without objection, except in a single instance. It thus appears that no objections were interposed to the following portions of the testimony thus set forth: That he had no fireman on the engine; that he was sent out without one; that it was not customary to send an engine out without a fireman; that if a fireman had been in place on the left-hand side of the engine, "I suppose he could" have "seen out of that side of the train," and "whether they would strike or not"; that such duty on the part of the fireman is customary and usual; that from his position a fireman, if he had looked out, he "could have seen whether they were going to clear or not." The only objection made throughout the cross-examination was to this question, "Who sent you out without a fireman?" And the objection was placed on the ground that "there is no charge that this injury resulted on account of negligence in not furnishing a fireman." In ruling thereupon, the court remarked that there was no such charge, but that the inquiry was admissible on the issue of negligence on the part of the engineer; and the answer was allowed, that Mr. Snyder (the roundhouse foreman) so sent him. The question and answer were admissible as part of the res gestæ, for the purpose stated, and the instructions clearly limited the testimony to that issue.

Finding no reversible error in the record, the judgment is affirmed.