ISSAQUAH COAL CO. v. UNITED STATES FIDELITY & GUARANTY CO.

(Circuit Court of Appeals, Ninth Circuit. October 5, 1903.)

No. 949.

1. FIDELITY INSURANCE—REPRESENTATIONS BY EMPLOYER—AUTHORITY OF OFFICER TO BIND CORPORATION.

The board of directors of plaintiff corporation, whose meetings were held in New York, passed a resolution requiring the general manager and the assistant treasurer, both of whom were in the state of Washington, where the business of the company was conducted, to procure surety

¶ 1. Fidelity insurance, see note to American Credit Indemnity Co. v. Wood, 19 C. C. A. 273.

bonds at the expense of the company, and they were so procured; that of the assistant treasurer being issued on a statement signed in the name of the company by the general manager as such, and which was referred to in the bond as having been furnished by plaintiff, and as one of the inducements for the execution of the bond. At the expiration of the term, requests for further statements or certificates from the employer were sent to the officers insured, which were filled out by the auditor of the company in its name, and returned, on which renewal certificates were issued. The auditor's certificate that the account of the assistant treasurer had been examined each month and found correct, etc., was in fact untrue. *Held,* in an action against the surety company to recover for a defalcation of the assistant treasurer, that the auditor's certificate was properly admitted in evidence, and the jury were correctly charged that if the fact of its execution was known to the general manager, who was in charge of plaintiff's business, of which there was evidence, it was binding on the plaintiff, although the auditor may not have been authorized, by virtue of his official position, to make the same; plaintiff being chargeable with notice from the recitals therein that the original bond was issued upon a statement made in its behalf, and bound to know on what representations the renewals were made.

**2.** SAME—DEFENSES TO LIABILITY—UNDISCLOSED RELATION OF EMPLOYÉ TO EMPLOYER.

If in fact an officer of a corporation whose fidelity is insured sustained other relations to the company than those indicated in its statement on which the bond was executed, and which were essentially different, and involved the receipt and expenditure of the employer's money, the failure to disclose such relations is a defense to liability of the surety company on its bond.

**3.** APPEAL—REVIEW—QUESTIONS NOT RAISED IN TRIAL COURT.

Where evidence in support of a defense was introduced without objection, an objection to the charge relating to such defense on the ground that it was not admissible under the pleadings cannot be made for the first time in the appellate court.

In Error to the Circuit Court of the United States for the Northern Division of the District of Washington.

This is an action brought upon a policy of fidelity insurance taken out by the plaintiff in error upon its secretary and treasurer, Allen Bell. The plaintiff in error, while it was a corporation of the state of Washington, had but three persons in that state officially connected with its business. These were Charles Power, the general manager; Allen Bell, the secretary and assistant treasurer; and E. D. Manning, the auditor. The board of trustees of the corporation, by resolution at a meeting held in New York, directed that surety bonds be procured by the general manager and the assistant treasurer in the sum of $10,000 each, and that the premiums therefor be paid by the company. The policy upon which the action was brought was issued upon a statement made at Seattle on July 11, 1899, on behalf of the plaintiff in error, and signed in its name by Charles Power under the official title of the general manager. The statement set forth that the assistant treasurer had been in the service of the company since February 7, 1899, and that he had satisfactorily conducted the duties of his office, and had kept his accounts faithfully and without default, and that when last examined or audited by the auditor of the company, on July 1, 1899, all the accounts of his office were found in every respect correct up to date. The policy recited that this statement had been furnished "relative to the duties, responsibilities and check to be used upon the employé in such position and other matters," and that in consideration of the sum of $50 paid as premium for the period from June 1, 1899, to June 1, 1900, "and upon the faith of the statement as aforesaid by the employer, it is agreed and declared," etc. Shortly before the policy expired by the limitation of its term, the defendant in error addressed a communication to Bell, notifying him that the policy would expire on the 1st of June following, and requesting him to have the certificate, a

form of which accompanied the letter, filled in and signed by his employer, and forwarded to the agents of the defendant in error, upon which a renewal receipt would be sent. The certificate was accordingly filled in and signed in the name of the "Issaquah Coal Company, Employer, by E. D. Manning, Auditor," and was sent as directed. The certificate certified "that on the first day of each month of 1900 the books and accounts of Mr. F. A. Bell, Treas. in our employ as Secty. & Asst. Treas. were examined by us and we found them correct in every respect, and all moneys handled by him accounted for. He has performed his duties in an acceptable and satisfactory manner and we know of no reason why the guarantee bond should not be continued." Upon this certificate the policy was renewed for a year from June 1, 1900. At the end of that period a similar notice was sent to Bell, and in answer thereto a similar certificate was returned to the company, signed and executed as before, and thereupon the policy was renewed for the year beginning June 1, 1901. By the by-laws of the plaintiff in error, Manning, the auditor, was given full charge of all books and accounts of the company relating to receipts and disbursements, and it was made his duty to enforce the system prescribed for keeping the same, and to check and examine the returns of all officers and employés as often as once a month, and see that proper returns were made of all receipts on account of the company's business, and that correct vouchers were turned over to him for all disbursements for any purpose. It was shown upon the trial that Manning's certificates were false; that he did not, in fact, at any time during Bell's incumbency in office, check or compare his cash on hand with the figures of the cashbook, or investigate the vouchers credited on the cashbook, to ascertain whether they had in fact been paid. There was no evidence tending to show collusion between him and Bell. The defendant in error, among other defenses, relied on the falsity of Manning's certificates to defeat recovery upon the policy. The court instructed the jury that if they found that the plaintiff in error, in order to induce the defendant in error to renew the obligation, certified to the statement contained in Manning's certificates, when in fact those statements were untrue, it would be a defense as to any defalcation for the respective periods covered by the renewals, and charged as follows:

"In this connection, gentlemen of the jury, it is proper for me to say that the evidence shows affirmatively that the defendant company did not apply to the plaintiff corporation directly for this certificate previous to either one of these renewals. But there is evidence tending to prove that such a request was made by the defendant company to Mr. Bell himself to procure a certificate of that kind, and there is evidence tending to prove that the certificate set out in the answer—the two certificates set out in the answer were signed by Mr. Manning (that is, that Manning made those statements and filled the blanks, and signed the corporate name by himself as auditor), and that these two certificates afterwards came into the possession of the defendant corporation; and there is evidence for you to consider to the effect that the defendant corporation and its officers considered that certificate, and relied upon it as true, and as being a certificate coming from the plaintiff corporation. Now, it is disputed that Mr. Manning had authority to act for the plaintiff company in signing its name to such a certificate as that, or to issue any such certificate, and the question is to be considered by the jury, in the light of all the evidence, whether Mr. Manning was authorized to act for the company in making that certificate; and his authority in the matter is to be considered with reference to what the corporation, or its general agent, Mr. Power, may have done in reference to holding him out as an authorized agent of the company in that regard. If there was no express authority given to Mr. Manning to act in this regard before he did act, and yet, if he made the certificate with the knowledge of Mr. Power, and it went to the company, and they issued their renewal bond, or entered into a contract continuing the original obligation for another period, relying upon that certificate, and Mr. Power, for the company, accepted that renewal contract in the full light of knowledge that it had been issued, and that the defendant relied upon a certificate signed only by Manning, then, as a matter of law, there would be implied authority given to Mr. Manning to make the certificate.

"The question is submitted to the jury to determine, in the light of all the testimony, what knowledge Mr. Power actually did have. You will consider this in connection with his denial of any knowledge, and in connection with all that appears with reference to his position—of being in a position where he must necessarily have possessed such knowledge. I mean, by 'his position,' representing the company—representing his own company and dealing with this defendant company—in view of any knowledge which the evidence shows affirmatively that he possessed in regard to the requirements of the defendant company in making these contracts, and with reference to knowledge which he possessed, and which must necessarily have been in contemplation when he accepted the renewal contract.

"If, as a matter of fact, Mr. Manning never was authorized to make these certificates, and if it was unknown to Mr. Power, or the general officer of the corporation— Well, I will leave that out, because there is no evidence that anybody except Mr. Power had anything to do with this transaction. He was the fully authorized agent of the corporation.

"Now, if there is no evidence, or not sufficient evidence, that Mr. Power had knowledge in regard to this certificate when he accepted the bond, then this defense as to these two periods must fail, because it is only in case the jury can find from the evidence in the case that the corporation itself acted to mislead the defendant that the defense is a lawful defense."

Walker & Munn, for plaintiff in error.

Preston, Carr & Gilman and James B. Murphy, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The plaintiff in error earnestly contends that the trial court erred in admitting the Manning certificates in evidence, and in instructing the jury as it did concerning the effect thereof; and it urges that these certificates were not the certificates of the plaintiff in error, that Manning was not an executive officer of that company, that he was but a bookkeeper and accountant, that he was in a position subordinate both to Power and to Bell, and that the evidence shows that it was at Bell's special instance and request that the blank forms furnished by the defendant in error were filled in by Manning, and sent as certificates to the defendant in error; and it urges that the plaintiff in error was not responsible for these certificates, and was not aware of their existence. It invokes the doctrine of American Surety Co. v. Pauly, 170 U. S. 133, 18 Sup. Ct. 563, 42 L. Ed. 987, in which the Supreme Court held that a bank president is not, by virtue of his office, empowered to make such a certificate concerning a cashier of the bank, and that a certificate so made by a bank president in the absence of express authority cannot bind the bank or defeat recovery upon such a policy of fidelity insurance; and it relies, further, upon the fact that there is in the case at bar no recital in the policy, or the renewals thereof, referring to the Manning certificates or any similar certificates, or making the same a part of the insurance contract. We think the present case is in essential features distinguishable from the Pauly Case. In that case the insurance was not obtained by the bank, but it was obtained, and the premium therefor was paid, by the cashier. In order to obtain the policy, the cashier produced and proffered to the insurance company the statement of the bank's president.

It was shown that in the defalcation of the cashier the president colluded. The policy, by its terms, made no reference to the statement of the president. It was shown that the board of directors of the bank had no knowledge of the issuance of the certificate by the president, and that they did not authorize the same. The court held that the issuance of such an instrument was not within the scope of the ordinary duties of the president of a bank, and that the certificate was a gratuitous commendation of one individual by another individual. The plaintiff in error cites also the case of United States Fidelity & Guaranty Co. v. Muir, 115 Fed. 264, 52 C. C. A. 56, but in that case the bond contained no reference whatever to the written application or the employer's statement. A bank cashier applied for the bond, and accompanied his application with a statement signed by the president of the bank. The president had no special authority to make the statement, and none of the directors knew of it, or was charged with knowledge of it, until after the action was brought on the bond. The court, following the Pauly Case, held that, the bank not having made or authorized the statement, it could not be interposed as a defense. In the case at bar the policy was procured by, and the premiums were paid by, the plaintiff in error. Power, its general manager, was required by the corporation, at the same time that the policy was obtained, to procure a policy insuring his own fidelity as manager. When his annual policy expired, renewals thereof were obtained in the same manner as renewals were obtained of the policies insuring Bell's fidelity. It sufficiently appears from the record, we think, that for these renewals the same kind of notice was sent to Power that was sent to Bell. There was evidence tending to show, and sufficient to go to the jury, that Power knew that Manning signed, on behalf of the company, for Bell, the same kind of certificate that he signed for him. We think the case must be ruled by the decision of the Supreme Court in Fidelity & Deposit Co. v. Courtney, 186 U. S. 342, 22 Sup. Ct. 833, 46 L. Ed. 1193. In that case the bond insured the fidelity of one McKnight, an officer who was first vice president, and later president, of a bank. Before renewing it, the insurance company addressed a letter to the cashier of the bank, in response to which the latter wrote, assuring it that McKnight had, up to that time, performed his duties in an acceptable and satisfactory manner, and that he (the cashier) knew of no reason why the bond should not be continued. It was contended that these letters were erroneously excluded by the trial court on the ground that it had not appeared from the evidence that there was special authority from the board of directors to the cashier to write the letter which he wrote, and that the court erroneously refused to permit the insurance company to prove by circumstantial evidence that the board of directors selected the bondsmen of McKnight and paid the premium for the bond, and that the cashier was acting in this matter with the knowledge and for the benefit and with the approval of the board of directors. Concerning this contention, the Supreme Court said:

"We are constrained to the conclusion that error was committed in rejecting the evidence referred to in the foregoing contention. It was competent for the defendant to show that the bank had concerned itself in and

about the obtaining of the bond and renewals in such manner as to cause the transaction to become, in effect, the business of the bank. The bank had notice from the terms of the original bond that it was issued in reliance upon statements and representations made on its behalf to the surety company, and that, in the ordinary course, renewals, which were to be optional with the surety company, might also be based upon further statements to be made on behalf of the bank. Thus, in the original bond it was recited that 'the said employer has delivered to the company a certain statement, it being agreed and understood that such statement constitutes an essential part of the contract hereinafter expressed.' It was a reasonable and proper precaution, in anticipation of a desired renewal, to propound the inquiries which were submitted by the surety company. The inquiry was contained in a written communication addressed to the bank, it was received by the bank, and it was proper to presume that it was delivered to the official who made reply thereto by authority of the bank; he being the executive officer who was charged with conducting the correspondence of the bank. We think the making of the certificate was an act done in the course of the business of the bank, by an agent dealing with the surety company for and on behalf of the bank. It did not purport to be, nor was it designed to be, the mere personal representation of the individual who filled the office of cashier, but it was an official act performed on behalf of the bank. The information solicited was such as was proper to be asked of and communicated by the bank, and, as the renewal was presumably made upon the faith of the statements contained in the certificate, the bank ought not to be heard, while seeking to obtain the benefits of the stipulations agreed to be performed by the surety, to deny the authority of its officer to make the representations which induced the surety to again bind itself to be answerable for the faithful performance by McKnight of the duties of his employment."

It is true that the present case differs from the Courtney Case, in that there is no evidence in the record showing that the board of trustees of the plaintiff in error selected the bondsmen of Bell, or that the auditor acted in the matter with their actual knowledge or approval, and there is no evidence to show that they ever knew before the commencement of the action that the renewals had been made upon certificates signed by the auditor. But in this case, as in the Courtney Case, they must have known, from the terms of the original bond, that it was issued in reliance upon a statement made on behalf of their corporation to the surety company, and that, in the ordinary course, renewals must also be based upon further similar statements. We have before us the peculiar case of a corporation claiming to be a corporation of the state of Washington, yet having its board of trustees and the meetings thereof in a distant state, and leaving all its business in the state of Washington in charge of a general manager. By a resolution the board directed that the general manager and the assistant treasurer procure bonds at the expense of the company. They thereby committed to those officers the matter of the procurement of the bonds. When the plaintiff in error received the policy in question, it had notice, from the terms thereof, that in its corporate capacity it had delivered to the insurer a statement in writing relative to the duties, responsibilities, and check to be used upon its employé in said position and other matters. It thereby became chargeable with notice of everything that the statement contained. Among the other matters set forth therein was the representation that the accounts of the secretary and assistant treasurer had on July 1, 1899, been audited and found correct, and that at that date he was not in default. It must have known that, in the ordinary course of busi-

ness, the renewals must necessarily have been based upon similar statements made in their behalf relative to the duties, responsibilities, and check to be used upon Bell, and the condition of his accounts. It is true that the first statement was signed by 'the general manager, whereas the subsequent statements were signed by the auditor. But in each instance they were signed in the name and on behalf of the corporation. Having notice. that the bond was issued in the first instance upon a statement made in its behalf, it became the duty of the corporation thereafter to inquire of and to know upon what statements the renewals were made. It is to be noted that there is no affirmative evidence in the record that the plaintiff in error did not have actual knowledge both of the original statement of its manager and the subsequent statements of its auditor, upon which the policy and the renewals were issued. The record is silent upon that subject. It is fairly inferable from the evidence that the employer's statement upon which the bond of Power, as manager, was issued, was made by Manning, the auditor. There was no other officer who could have made it. Mr. Power knew that the two bonds were issued at the same time, and that they expired at the same date. The renewal notices were lodged in the general office of the company at Seattle, and, while it is probable that they were there placed in the possession of Mr. Bell, Powers must have known that the renewal certificates of both were signed by Manning. These certificates were mailed to Manning at the mine, to be signed by him there, and were thence mailed by him, addressed to the Issaquah Coal Company, at its general office at Seattle. Power testified, it is true, that he knew nothing of these certificates that were signed on behalf of 'Bell, but we think the evidence discloses facts sufficient to justify the submission of that question to the jury. If so, we can find no error in the instructions of the court. In Guarantee Co. v. Mechanics', etc., Co., 183 U. S. 402, 22 Sup. Ct. 124, 46 L. Ed. 253, the statements required to be made were made on behalf of the bank, and the president acted for the bank in so doing. The bonds were procured by the bank, and the bank paid the premiums. The court held that there could be no doubt that the bank was responsible for the representations of its president in procuring the contracts of indemnity, and that the representations made in the declaration on which the cashier's bond was issued were clearly misrepresentations.

Error is assigned to the instruction of the court to the jury as follows:

"The court further instructs you that the defendant in this action, by its written obligation in evidence, undertook to guaranty the fidelity of Mr. Bell as secretary and assistant treasurer, and did not undertake to guaranty his fidelity in any other capacity; and if Mr. Bell sustained any relation to the plaintiff in this action at the time the bond was written, other than that of secretary and assistant treasurer, it was the duty of the plaintiff to disclose such relation; and if you find from the evidence in this action that, at the time the bond in question was written, Mr. Bell was the sales agent of the plaintiff, as well as secretary and assistant treasurer, then I instruct you that it was the duty of the plaintiff to disclose that fact to this defendant; and if you find that Mr. Bell's position, and the fact of his being sales agent, added to his temptations or responsibilities in such a way as to increase the obligation of this defendant upon its bond, then I instruct you that, as a

matter of law, the defendant is released, and your verdict should be in its favor."

This instruction was based upon the contention of the defendant in error that the original statement made by Power on behalf of the corporation concerning the office and duties of Bell was false, in that it failed to show that Bell, in addition to holding the offices of secretary and assistant treasurer, was also a salesman for the company, and in that capacity received and expended considerable sums of money. The employer's statement to the defendant in error contained no reference to his duties as salesman. It was shown in the evidence that he was such salesman, and that he sold coal to "railroads, steamboats, and steamships, and to manufacturing plants around town, and sold coal locally"; that sales were made largely on his personal efforts, and with the assistance of others whom he engaged for that purpose; and that his average monthly expenses for selling coal were about $300 a month, which he spent on the streets and in the neighborhood of Seattle in his efforts to procure sales of coal. The plaintiff in error contends that the charge was not justified by the pleadings, but the record shows that the evidence was introduced without objection, and the point that it was not warranted by the pleadings is made for the first time in this court. We think the objection comes too late. Chicago Terminal Transfer Co. v. Stone, 118 Fed. 19, 55 C. C. A. 187; Jones v. Meehan, 175 U. S. 1, 20 Sup. Ct. 1, 44 L. Ed. 49. Nor do we find error in the instruction. If in fact the officer whose fidelity was insured sustained other relations to the company than those indicated in the employer's statement—relations essentially different from those that were indicated, and which involved the receipt and expenditure of the company's money—the insurer was entitled to be informed thereof. Home Savings Bank v. Traube, 6 Mo. App. 221.

One of the defenses relied upon by the defendant in error was that the original statement upon which the bond in suit was issued stated falsely that Bell was not in arrears in his accounts on July 1, 1899. To sustain that defense, evidence was introduced showing a considerable balance against Bell on an account kept on the ledger of the plaintiff in error in the name of F. A. Bell, agent. It was a ledger account on the general ledger of the company kept at the mine, showing sales of coal made at the mine by Bell. Error is assigned to the instruction of the court by which the jury was permitted to find that if the statement made in the original employer's statement was untrue, and was known to the employer to be untrue at the time when made, and if the defendant in error relied thereupon, there could be no recovery. It is contended that this instruction was erroneous, for the reason that there was no evidence tending to show that Bell was in any way personally liable on the account so referred to. The evidence in the record does not very clearly show the relation of Bell to that account. Power testified that the account in the name of F. A. Bell, agent, was so kept for convenience only, and that there was no personal liability against Bell unless he collected the money. Said the witness: "We held him responsible for all money collected on that account, but for nothing else." Bell had no connection with

this account after October 1, 1901, but at the time of the trial there was still a balance of $4,900 debit thereon, notwithstanding that at that time accounts not considered worth carrying had been charged off the same. Bell testified that he had considered that he was pecuniarily liable on that account until Power, on the witness stand, testified to the contrary. From the evidence in the record, we are not able to see that this account carrying an apparent balance against Bell did not on June 1, 1899, indicate to some extent, at least, a real liability to the company, or that the court erred in submitting the question, as it did, to the jury.

The judgment is affirmed.