## MARYLAND CASUALTY CO. v. FIRST STATE BANK et al.

No. 10145—Opinion Filed Feb. 12, 1924.

(Syllabus.)

1. **Insurance—Fidelity Bond—Statements as Representations or Warranties.**

While a warranty in an indemnity bond is legal and not unconscionable, it is often unfair and is always harsh. Statements therein will not be construed to be warranties unless the language is not capable of any other interpretation. Where it is not substantially recited in the bond that it is issued in consideration of the statements warranted, nor that they are made the basis of the bond, nor that the obligor has given full faith and credit to such statements, and it is not alleged in the bond that such statements are made a part of the bond, and same are not copied into, indorsed upon, or attached to the bond, such statements, although styled warranties therein, are not a part of the bond, and are not warranties, but are mere representations.

2. **Same — Statements Invalidating Bond.**

When it is provided in an indemnity bond that the obligee thereby agrees that such bond shall become void if there shall be found untrue any certain statements identified in said bond, such agreement is valid even though such statements are not made a part of the bond, set out therein, or attached thereto. Such statements, although not warranties, if proven to be untrue in any material matter and it be established that the obligor in the execution of said bond was thereby misled to his prejudice, the bond will be avoided. Sections 6278 and 6765, Comp. Stats. 1921, have no application thereto.

3. **Corporations — Responsibility for Knowlege of Officer Gained Not in Course of Business.**

A corporation is not charged with the knowledge of its officer gained in doing an act not in the course of business of the corporation and wholly beyond and without authority of such corporation and not by it ratified, but done in a matter shown upon its face to be one in which his interests are adverse to the corporation and in pursuance of a fraudulent plan or scheme to cheat and defraud the corporation.

4. **Insurance—Fidelity Bond — Effect of Acceptance.**

A bond of indemnity is not binding upon the obligor until accepted by the obligee. He cannot accept its benefits and reject its burdens. Bringing suit to enforce the same constitutes an unconditional acceptance of its every lawful provision.

5. **Same—Provisions in Bond Exciting Inquiry by Obligee.**

Where an indemnity bond is presented to an obligee for his acceptance, he is charged with actual knowledge of all facts therein disclosed, and with constructive knowledge of all things material thereto which he would have learned by reasonable inquiry and effort concerning things sufficiently appearing on the face of such bond to put upon inquiry a reasonably prudent man interested therein as obligee.

6. **Same—Acceptance of Bond by Agent of Obligee—Effect.**

Authority of an agent, as officer of a corporation, obligee in an indemnity bond, to accept the bond, includes authority to reject it. When such obligee sues the obligor thereon, it cannot, in the absence of fraud on the part of the obligor, be heard to say that in accepting said bond it failed to learn the conditions of said bond by reason of the neglect, to do their duty, of its duly authorized officers and agents whose acts are not covered by such bond.

7. **Same — Ratification of Statements by Agent of Corporation.**

When the obligor in an indemnity bond delivers such bond to a corporation, as obligee, for its acceptance, and it is apparent from the face of the bond that the obligor is executing said bond upon faith in an agreement therein contained that the bond shall be void unless certain statements are true which it is therein recited have been made by the obligee acting through some one assuming to be its agent, the obligee by accepting the bond ratifies the authority of the assumed agent to make such statements and, as to the obligor, becomes estopped to deny such authority.

Error from Superior Court, Okmulgee County; R. B. Simpson, Judge.

Action by the First State Bank of Dewar against the Maryland Casualty Company and another on fidelity bond. Judgment for plaintiff, and defendant named brings error. Reversed and remanded.

Ross & Thurman, for plaintiff in error.

S. P. Freeling and M. M. Thomas, for defendant in error.

LYDICK, J. On March 4, 1916, the Maryland Casualty Company, a corporation, as obligor, executed and delivered to the First State Bank, of Dewar, Okla., as obligee, a bond indemnifying it against the defalcations of Scott W. Whitehead, its cashier. The substantive parts of the bond herein considered read as follows:

"Whereas, the employer has delivered to the Maryland Casualty Company, a corporation of the state of Maryland, hereinafter called the "Company," certain written statements relative to the employe, his conduct, duties, employment and accounts; the manner of conducting the business of the employer and other things connected with the issuance of this bond:

"Now, Therefore, for and in consideration of the sum of twenty and no-100 dollars ($20.00), paid as premium for the period from noon on the 17th day of March, A. D., 1916, to noon on the 17th day of March, A. D., 1917, the Company hereby covenants and agrees that it will * * * make good and reimburse the employer to the extent of the sum of five thousand and no-100 dollars ($5,-000.00) and no further, for such loss * * * which the employer shall have sustained by reason of any act or acts constituting larceny or embezzlement, committed by the employer;

"This bond is executed by the Company upon the following express conditions, which shall be deemed conditions precedent to any right of the employer to recover hereunder.

"First. That the acceptance and retention of this bond by the employer shall be considered as conclusive evidence that the employer consents and agrees to all the terms, conditions and provisions contained herein, and all written statements made, or which at any time may be made by the employer in connection with this bond, or any renewal thereof, are warranted by the employer to be true, and if any such statements shall be found to be untrue, in any particular, or if the employer shall willfully suppress or misstate any fact in making any claim for, or in proving any loss under this bond, then this bond shall become void and the Company shall not be liable to the employer for any claim whatsoever made under or by virtue of this bond."

The company filed its answer, admitting the execution and delivery of the bond to the plaintiff. Among the several defenses pleaded, the company alleged:

"That as a basis for the issuance of said bond by this defendant, and as a condition upon which bond was issued, the plaintiff, on the 25th day of February, 1916, executed and delivered to this defendant its certain certificate or statement," etc.

A copy thereof was attached to the answer as a part thereof and reads as follows, to wit:

"Employer's Certificate.

"The undersigned hereby certifies that Mr. Scott W. Whitehead has been continuously in our employ since January 20, 1914, and under bond in the National Surety Company and has faithfully and honestly accounted for all money and property in his control or custody and has never been in default to us at any time.

"He has performed his duties in an acceptable and satisfactory manner and we know of no reason why a guarantee bond on his behalf should not be issued.

"Dated this 25th day of February, A. D., 1916, (Signed) First State Bank, Dewar, Okla. By Scott W. Whitehead."

The bank, alleging defalcations of its cashier, brought suit against the company and Whitehead.

Plaintiff filed a reply containing a general denial and other affirmative allegations. No part of the reply is material to the portions of the defendant's answer pleaded above, except the general denial. It was not verified. The case was tried to the court and jury. The company sought to introduce evidence to show that the statements contained in such certificate were untrue, contending same were made warranties by the recital in the bond. The court denied the company this right and theory, and it duly saved its exceptions. Judgment was rendered in favor of the plaintiff bank and against defendant company, and the company brings the case here by petition in error with case-made attached.

Before specifically considering either the authority of Whitehead, or whether the statements are warranties, it is advisable to call attention to the nature of the particular defense which we will consider in this opinion. The company is not relying primarily upon the act of the bank in executing this certificate on February 25, 1916. Quite differently, the company here says that the bank, by accepting the bond, did on that date, to wit, March 4, 1916, agree to its express terms, to wit, that if any of the statements contained in said certificate were untrue, the bond would be avoided; that thereby the bank, when it accepted the bond, made the statements contained in the certificate executed February 25, 1916, the statements of the bank itself, regardless of whether the statements had in the first instance been signed by the bank through one with authority so to do. The company pleads that by virtue of the agreement in the bond itself, the obligations of the bond are avoided.

The certificate is not copied into the bond, indorsed thereon, nor attached thereto. It therefore requires parol testimony to prove

what statements are covered by the bond. If the certificate or statements appeared in the bond itself, the identification would be complete and the agreement that false statements therein contained avoided the bond would be binding, if at all, regardless of whether the bank's name to such certificate was signed by authority or without authority. Identification not appearing upon the face of the bond, parol evidence is competent to so identify the same. That proof must be convincing that the certificate was "made" by the bank, or else the same fails to be identified as the one referred to in the bond. For purposes of identification only, then, we must inquire into the authority of Whitehead to sign the bank's name thereto.

Before doing so, we will determine whether these statements are warranties or mere representations, for upon that determination depends whether a false statement therein contained need be material to avoid the bond.

No literal, liberal, or reasonable construction of section 6278 or section 6765, Compiled Oklahoma Statutes, 1921, or the act of which they are a part can make them applicable to the case at bar. The case of Continental Casualty Company v. Owen, 38 Okla. 107, 131 Pac. 1084, is not in point. In that case the policy was a life insurance policy and the parties agreed upon the application of the statute, and the court did not pass upon that question.

"A representation is an oral or written statement which precedes the contract of insurance, and is no part thereof, unless it be otherwise stipulated, made by the assured or his authorized agent to the underwriter or his authorized agent, and relates to facts necessary to enable the underwriter to form a judgment whether he will accept the risk and at what premium." Joyce on the Law of Insurance, vol. 3 (2nd Ed.) par. 1883, page 3040.

"The former (representation) is part of the proceedings which propose a contract, while the latter (warranty) is a part of the completed contract, either expressly inserted therein or appearing therein by express reference to statements expressly made a part thereof. The falsity of the former may render the contract voidable for fraud; but a noncompliance with the latter is an express breach of contract." Joyce on the Law of Insurance, vol. 3 (2nd Ed.), par. 1882, page 3038.

"A 'warranty' in an insurance contract is a statement made therein by the assured which is susceptible of no construction other than that the parties mutually intended that the policy should not be binding unless such statement be literally true." Words & Phrases, vol. 4 (2nd Ed.) page 1244.

See, also, 14 Ruling Case Law, pages 1026 to 1030, inclusive.

In the case of Mutual Life Ins. Co. of New York v. Morgan, 39 Okla. 205, 135 Pac. 280, Commissioner Rosser, speaking for the court, quoted with approval from the case of Commonwealth's Ins. Co. v. Monninger, 18 Ind. 352, where the court said:

"We do not think the mere indication, in the policy, of the place where the application could be found on file, can be regarded as so referring to it as to make it a part of the policy. In this view we are strengthened by the language used, which appears to disclose the purpose for which the reference is made, namely, 'for a more particular description'; and if it does not exclude the conclusion, it at least does not warrant us in concluding that the reference was intended for the purpose of incorporating said application as part of the policy, so that in any court its statements could be regarded as warranties. We are aware that a paper, attached to a policy, may by express terms, etc., be made a part of it, and amount to a warranty. But it should be referred to expressly as forming a part of it."

"Statements and representations made to an indemnity company for the purpose of inducing said company to execute a bond for hire, guarantying the faithful discharge of the duties of an employe, will not be construed to be warranties unless the language used is not capable of any other interpretation." Guthrie Natl. Bank v. Fidelity & Deposit Co. of Md., 14 Okla. 636, 79 Pac. 102.

A warranty in an indemnity bond is neither illegal nor unconscionable, and must be enforced. However, it is often exceedingly unfair, always extremely harsh, and, even though based upon but slight and immaterial error committed in good faith and without injury, it exacts its pound of flesh. This bond was not issued in consideration of this certificate or so-styled warranty, nor were they made the basis thereof. The company did not give full faith and credit to the statement. At least, no such allegations appear in the bond, which the company itself wrote. It did not copy into, indorse upon, nor attach to the bond the statements which it claims were warranted to be true. No recital is inserted in the bond that the statements are made a part of the bond. The reference to the statements fails to give even the slightest information of the substance of the statements and does not recite even where the same can be found. It leaves to parol proof just what statements it had in mind, a condition most unfair to the obligee. The company cannot object that we consider it intended to be fair with the bank at the time it had the bank accept the terms of the bond. Certainly if it intended to have the bank agree that the bond, which is so sorely needed, would be entirely avoided in event even the slightest immaterial state-

ment contained in the certificate were found untrue, and even though same had in no wise deceived the company—we say that, had the company so intended, its sense of common decency would have required it to recite in the bond something to more effectively let the obligee know it intended to make the statements of the bond a part thereof or to enable the obligee to know or more easily to learn at least the substance of the harsh agreements being made. Rather does it appear under all the circumstances that the company did not consider to be material the literal truth of every immaterial part of the certificate; did not intend same to be a substantive part of the bond itself; that it referred to same for identification purpose only. The language as a whole is capable of a construction other than that same constitutes a warranty. The requirement of the rule is not met. We hold, therefore, that the statements are mere representations and not warranties.

Now, for the purpose of identifying the "certain written statements" referred to in the bond, we will inquire into the authority of Whitehead to sign the bank's name thereto. That authority must appear as actual, implied, apparent, by estoppel or otherwise, if these statements are to be identified as those covered by the bond.

The company in its answer affirmatively alleged that the bank, not Whitehead, executed and delivered this "Employer's Certificate." That allegation was not denied under oath. Under section 287, Compiled Oklahoma Statutes, 1921, its execution by the bank stands admitted.

It is urged by both parties to this appeal that this question, however, is very material and of state-wide importance, and that the court in this case, therefore, should lay down the rule applicable here.

The law did not require the bank to certify any facts to the company or to do any other acts toward inducing the company to execute a bond for its employe. Likewise, the law did not require the company to execute such a bond. Within proper limitations the entire matter was one of voluntary contract between the employe, the company, and the bank. It was the duty of the employe to furnish and deliver the bond to the bank, and the statutory duty of the board of directors, if it found same sufficient and satisfactory, to approve it, but otherwise to reject it. The employe for himself, personally, and not as agent of the bank, asked the company to execute the bond. The bank was to become the obligee and the beneficiary in the bond. With this interest therein and in order to obtain such bond, the bank

had the right to certify facts to the company when requested so to do. Such act would not be ultra vires.

This bond already signed by the company was tendered to the bank for its approval—for its acceptance or rejection. Then, if not before, the bank saw, by written provisions of the bond than tendered, that (quoting from bond):

"The employer (the bank) has delivered to the Maryland Casualty Company * * * certain written statements relating to the employe, his conduct, duties, employment and accounts."

In the case of Liverpool, L. & G. Ins. Co. v. T. M. Richardson Lbr. Co., 11 Okla. 579, 69 Pac. 936, this court in section 3 of the syllabus lays down this rule:

"An applicant for insurance who accepts a policy, the provisions of which are plain, clear, and free from all ambiguity, is chargeable with knowledge of its terms and legal effect. It is the duty of the assured to read and know the contends of the policy before he accepts it, and where he fails or neglects to do so, he is estopped from denying knowledge of its terms and legal effect. It is the duty of the assured to read and know the contents of the policy before he accepts it, and where he fails or neglects to do so, he is estopped from denying knowledge of its terms and conditions unless he alleges and proves that he was induced not to read the policy by some trick or fraud of the other party."

By a further reading of this bond then tendered the bank saw that such "certain written statements" were most material, because the bond provided that:

"All written statements made * * * * by the employer (the bank) are warranted by the employer to be true, and if such statements shall be found to be untrue, in any particular * * * then this bond shall become void."

In making such statements, the bank, being a corporation, could have acted only through an agent. In proceeding thereupon to determine whether it would accept or reject said bond, the bank had knowledge of the fact that some one claiming to act for and on behalf of the bank had made to the company certain written statements, and that the company in executing and tendering the bond to the bank was relying upon the assumption that such person is so doing had the authority to act for the bank, and therefore believed that such statements were covered by and included in the paragraph therein making the truthfulness of the bank's statements a condition precedent to a recovery by the bank upon said bond. It therefore became the duty of the bank to make

inquiry then and there to learn the contents of such statements and to ascertain what person had assumed to act for the bank in making to the company such statements in the name of the bank. Inquiry would easily have developed the fact, and the bank is therefore charged, as to the date when it accepted said bond, with a knowledge of all of said facts. It now appears that the person who, on behalf of the bank, had made such " certain written statements" was Scott W. Whitehead, the cashier of the bank, who was the employe to be bonded. The statements were written and are set out in the statement of facts, supra.

It was therefore with full knowledge of all these facts, either actual or constructive, that the bank accepted the bond with conditions therein stated as aforesaid, and continued in its employ Scott W. Whitehead as cashier, then and at all times thereafter claiming the company liable to the bank under said bond for default of said cashier.

Suing the company upon the bond, the bank now asserts that no written statements were made by the employer (the bank) in obtaining said bond, and that therefore the bank by accepting said bond has not warranted in any manner any statements to be true; that none having been made by the bank, there were none to which the so-called warranty or agreement could attach. This position they seek to support by saying:

First, that neither by law nor by the by-laws of the corporate bank would the bank's cashier, whoever he might have been, have either actual, express, or implied authority to make to the company such a statement of facts contained in said employer's certificate, even in relation to some other employe of the bank.

Second, that since the application for said bond was personally interested in the steps taken to obtain same, and, in the making of said employer's certificate, had an interest therein adverse to the bank, he was not the bank's representative in so doing.

Passing the first proposition as probably correct within certain limitations not material here, we consider also the second proposition to be true up to the point in the proceedings where the bank, with full knowledge of facts as aforesaid, either actual or constructive, came to pass upon the question as to whether it would approve and accept the bond or reject it. In United States Fidelity & Guaranty Co. v. Shirk, 20 Okla. 576, 95 Pac. 218. Mr. Justice Kane, speaking for this court, said in sections 1 and 2 of the syllabus:

"One who, by his conduct, has led an innocent party to rely upon the appearance of another's authority to act for him, will not be heard to deny the agency to that party's prejudice.

"One who voluntarily accepts the proceeds of an act done by one assuming, though without authority, to be his agent, ratifies the act, and takes it as his own, with all its burdens, as well as all its benefits."

In 31 Cyc. 1236, it is held:

"The doctrine of estoppel involves apparent or ostensible agency, which exists where the principal intentionally, or by want of ordinary care, induces third persons to believe another to be his agent, although he did not in fact employ him."

In 31 Cyc. 1245, it is held:

"Ratification as used in the law of principal and agent may be defined as the adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who at the time assumed to act as his agent in doing the act or making the contract without authority to do so."

"He who would avail himself of the advantages arising from the act of another in his behalf must also assume the responsibilities. If the principal has knowingly appropriated and enjoyed the fruits and benefits of an agent's act, he will not afterwards be heard to say that the act was unauthorized. One who voluntarily accepts the proceeds of an act done by one assuming, though without authority, to be his agent, ratifies the act, and takes it as his own with all its burdens, as well as all its benefits. He may not take the benefits and reject the burdens, but he must either accept them or reject them as a whole." Mechem on Agency, sec. 148.

In Bragdon v. McShea, 26 Okla. 35, 107 Pac. 916, Mr. Justice Hays, speaking for the court, asserts a limitation to the rule discussed above in section 3 of the syllabus, where it is said:

"In order for the silence of a party to constitute an estoppel against him, it must have occurred under such circumstances as to have made it his imperative duty to speak, and the party in whose favor the estoppel is invoked must have been misled into doing that which he would not have done but for such silence."

The Court of Appeals of Kentucky, in the case of Warren Deposit Bank v. Fidelity & Deposit Co., 116 Ky. 38, 74 S. W. 1111, had a similar question for consideration, and there the court said that, even conceding that the officer of the bank had neither actual, apparent, or implied authority—

"There is no principle of the law of agency truer or more familiar than that, although an agent may act in fact without authority, express or implied, from his principal, his

act may become binding upon the latter by its ratification. The contracting parties in this matter were three, to wit, the bank, Porter, its cashier, and appellee, his surety. Each of these contracting parties, by the terms of the bond sued upon, engaged to one or both of the others to do or not to do certain things. To have been binding upon any of them, it must have been executed, or its execution must have been ratified, in a manner binding upon each. Appellant asserts, by seeking to recover upon the bond, that the contract was made on its behalf, and that it was authorized. It is not claimed, nor is it attempted to be shown, that the board of directors acted at all in that matter, so far as any proceedings by their body is concerned. The action of Smallhouse, then, was that which represented the bank in that transaction. If the bank would avail itself of the benefit of his actions, it must take them subject to his representations and statements that induced the execution of the contract by the surety. Furthermore, the bond itself recites: 'Whereas the employer has delivered to the company certain statements and declarations relative to the duties and accounts of the employe, which, together with any statements or declaration hereafter required by or lodged with the company; do and shall constitute an essential part, and form the basis of this contract.' If the board examined the bond at all, they are bound to have taken notice of these statements, which is enough to have reasonably put them upon inquiry as to the character of the statements therein referred to. But, whether they actually examined the bond or not, they must, in all fairness and reason, be held to have assented to its statements, when appellant elects to claim a recovery upon it. It manifestly would not do to impose upon one party to a contract an obligation in favor of another, which was made to depend upon a condition stated in the contract, and yet relieve the latter from the condition because he had not noticed it. Having accepted the result of its president's action in procuring the bond for it, and being required to take notice of all material statements and conditions contained in the bond, appellant is as much bound by these statements and the concurrent representations made by its president and referred to in the bond as if his action and statements had been expressly authorized by the most solemn and specific entry of record upon the minutes of the board of directors' book of proceedings."

See, also, Guaranty Co. of N. A. v. Mechanics' Sav. B. & T. Co., 183 U. S. 402, 46 L. Ed. 253; Willoughby v. Fidelity & Dep. Co., 16 Okla. 546, 85 Pac. 713, 7 L. R. A. (N. S.) 548; Fidelity & Dep. Co. v. Courtney, 186 U. S. 342, 46 L. Ed. 1193; Issaquah Coal Co. v. U. S. F. & G. Co., 126 Fed. 89, 61 C. C. A. 145.

The nature of Whitehead's disqualification to act as the bank's agent was not such as to prevent the bank, with full knowledge of the facts, from giving him express authority to act or to prevent the bank from ratifying his acts after they were made. His acts were voidable—they were not absolutely void. When his acts already performed were brought to the attention of the bank, by actual and constructive knowledge as aforesaid, the bank had the power either to disavow his assumed agency and escape liability for the thing he had done in its name, or to waive his lack of power and authority to bind the bank and to ratify his acts and make them effectively the acts of the bank. The bank well knew that a surety company would not desire to blindly bind itself by the bond covering an employe's defalcations without some kind of assurance from the bank that this employe had not already become an embezzler of its funds.

Knowing that the company was about to enter into a binding contract with the bank on the assumption that the acts of Whitehead, as purported agent of the bank, in making said employer's certificate were in fact the acts of the bank, and knowing that the company believed that the bond would be avoided unless those statements made by Whitehead in the name of the bank were true, it was the imperative duty of the bank, if it were not to be bound by Whitehead's actions, then and there to break its silence and speak to the company denying Whitehead's authority. Had the bank done their duty, the company would have had the opportunity to it due, of withdrawing the bond. Did the bank do this? No, it wanted the bond; it accepted the bond; it took the benefits of Whitehead's act of assumed agency, and the court must therefore give it the burdens.

It is suggested, however, that the company, when it accepted the employer's certificate, saw from the face thereof that the bank's name was signed thereto by Whitehead and that it was then apparent to the company that his interest was so adverse to the bank that he was disqualified to act as agent of the bank in making said certificate. This is true, but the company also knew as a matter of law that it would not be obligated on the bond until it was accepted by the bank. It knew that it was then provided in section 262, Rev. Laws 1910, (section 4119, Comp. Stat. 1921):

"The board shall require the cashier and any and all officers having the care of funds of the bank to give a good and sufficient bond to be approved by them and held by the State Banking Board."

The board of directors was the final arbiter of the question of Whitehead's au-

thority, and with either actual or constructive knowledge of the facts it acted by accepting the bond, and it is estopped from now denying the lawful result thereof.

Defendant in error cites the case of American Surety Co. v. Pauly (U. S.) 42 L. Ed. 977. The case is not in point. There the company issued a bond to the bank covering defalcation of one O'Brien, already its cashier. A certificate that O'Brien was not an embezzler was signed in the name of the bank by Collins as its president. The bond was issued and accepted by the board of directors of the bank. O'Brien defaulted and the bank sued on the bond. The surety based its defense on fraud alone, to wit, that the statements in the certificate were false. Nowhere in the bond did it appear that any one on behalf of the bank had made or signed any statements to the company or that the falsity of any statements would avoid the bond. No officer of the bank had any knowledge or reason to believe that statements had been made except O'Brien and Collins. It appears that the statement that O'Brien was not an embezzler was false; that he in collusion with Collins, the president, had been stealing the funds of the bank before this bond was given and that Collins confederated with O'Brien to make a false certificate in the name of the bank to obtain the bond so that they might continue their illegal transactions for their own personal felonious gain. The company contended that the bank and its board of directors in accepting the bond were charged with the knowledge had by Collins and O'Brien, its president and cashier. In the case at bar, the contention is that the bond on its face disclosed the facts. The court held as stated in sections 5, 6, and 7:

"The presumption that the agent informed his principal of that which his duty and the interests of his principal required him to communicate does not arise where the agent acts or makes declarations, not in execution of any duty that he owes to the principal nor within any authority possessed by him, but to subserve simply his own personal ends or to commit some fraud against the principal.

"In such cases the principal is not bound by the act or declarations of the agent unless it be proved that he had at the time actual notice of them, or, having received notice of them, failed to disavow what was assumed to be said and done in his behalf.

"False representations as to the honesty of a cashier who applies to a surety company for a bond, made by the president of the bank, not in the course of the business of the bank nor within any authority which he possessed, but in pursuance of a scheme between him and the cashier to defraud the bank,—will not be chargeable to the bank or defeat the liability on the bond."

We approve these rules. We do not base our holdings on the theory that the bank is chargeable with the knowledge of Scott W. Whitehead, but upon the theory that the recitals in the bond itself in the case at bar, unlike the case above, furnished actual and constructive notice of what had been done.

But it is said that the board of directors did not in fact approve and accept this bond, as by statute required. It is said that this was then a "one-man" bank, and that one man was Whitehead; that all other officers were mere "figure-heads" placed in such position merely to satisfy the form of the law. They say that this bond upon being delivered to the bank was received by Whitehead, and not even seen by the board of directors or other officers of the bank, and was by Whitehead surreptitiously slipped into the archives of the State Banking Department, where under the law it should be deposited. They say, therefore, that our process of reasoning as to estoppel and ratification cannot apply to the real facts. Shall we take the bank at its word and hold that this bond has never been accepted by the bank acting through its board of directors or some officer or agent authorized so to do? If so, we must dismiss its suit, for the bond cannot mature into a contract binding upon the obligor until its acceptance by the obligee. Likewise the obligee cannot be heard, without the consent of the obligor, to say that he accepted the contract in part without accepting its every lawful provision. The filing of the suit by the bank on the bond thus constitutes an acceptance of the bond, acceptance of its every lawful provision. An acceptance of this bond by the bank, regardless of who acted for the bank in its acceptance and no matter whether its acceptance was expressed or implied from its acts, amounted to a ratification and an estoppel. The bank cannot take advantage of the failure of its board of directors to do its duty. The bank cannot be permitted to profit by its own wrongful act of negligence.

If this was a one-man bank and that one man was Whitehead, then it was made so by the failure of others interested in the bank to do their duty. If thereby they find the bank with a bond not giving protection, the burden of the loss must fall upon those who must bear the burden of the blame. This rule will not adversely affect the interest of the state in the ad-

ministration of the banking department, if that department will merely enforce the laws of the state, for those laws prohibit the very existence of the so-called "one-man bank."

Some of the assignments of error which we have not considered become immaterial in the further trial of this case upon the law as declared in this opinion. The alleged errors covered by the remaining assignments will likely not occur in a further hearing.

For reasons stated in this opinion, it appears that the plaintiff in error has been deprived of substantial rights in the trial of the case in the court below. It is therefore ordered that the judgment of the lower court be reversed and the case remanded, with instructions to the district court to grant a new trial and proceed in accordance with the opinions of the court herein expressed.

JOHNSON, C. J., and KENNAMER, NICHOLSON, BRANSON, HARRISON, and MASON, JJ., concur. McNEILL, J., dissents.