**MARYLAND CASUALTY CO. v. TULSA INDUSTRIAL LOAN & INVESTMENT CO.**  *

No. 1287.

Circuit Court of Appeals, Tenth Circuit.
April 9, 1936.

*Rehearing denied May 27, 1936.

Hal C. Thurman, of Oklahoma City, Okl. (Thurman, Bowman & Thurman, of Oklahoma City, Okl., on the brief), for appellant.

W. E. Green, of Tulsa, Okl. (J. C. Farmer, of Tulsa, Okl., on the brief), for appellee.

Before LEWIS and BRATTON, Circuit Judges, and KENNEDY, District Judge.

BRATTON, Circuit Judge.

This is an appeal from a judgment for plaintiff in a suit to recover on two blanket position bonds similarly conditioned and given to indemnify plaintiff against loss suffered through larceny, theft, embezzlement, misappropriation of funds, or any other fraudulent act of its employees. The first bond was executed on May 3, 1932, and remained in force one year. The extent of the indemnity provided was $5,000 on each employee and $15,000 additional on the secretary-treasurer. The second was executed on May 3, 1933 and provided like indemnity of $2,500 on each employee with $12,500 additional on the secretary-treasurer. Each bond provided that if loss should be caused by the fraud or dishonesty of two or more employees and the insured should be unable to designate the specific employee or employees causing it, the insured should be protected but the aggregate liability should not exceed the amount of indemnity carried on a single employee; and that the liability should be confined to acts committed while the bond was in force and which were discovered and reported to the insurer within two years after its termination.

It was alleged in the first count of the petition that during the year following May 3, 1932, plaintiff sustained a loss of $30,-736.89 caused by theft and embezzlement of its employees; that such loss was discovered on February 26, 1934; that notice thereof was given immediately to the defendant; and that formal proof and claim was submitted on March 22, 1934. A similar loss of $21,881.62 between May 3, 1933, and February 26, 1934, followed by discovery, notice, and submission of proof on the respective dates mentioned, was charged in the second count; and in the third count it was alleged that items of loss in the sum of $788.40 suffered between May 3, 1932, and May 3, 1934, were discovered after the formal proof was submitted. Defendant admitted the execution and delivery of the two bonds, but pleaded affirmatively that it was not liable because plaintiff made false and fraudulent representations in the respective applications for the bonds and that it relied and acted upon them.

The facts were stipulated. Plaintiff is engaged in the lending and investment business at Tulsa, Okl. At all material times, W. L. Dunn was one of its directors and its secretary-treasurer and loan manager. For some time prior to the execution of the first bond involved here, plaintiff carried indemnity protection with Hartford Accident & Indemnity Company. Defendant wrote plaintiff outlining the advantages of a blanket position bond and stating the rates of premium thereon. After due consideration, plaintiff's board of directors passed a motion in the nature of a resolution to terminate its bond in the other company and to secure a blanket position bond from defendant. Pursuant to that action plaintiff submitted a written application for the bond on a form prepared by the defendant and signed by Dunn, as secretary-treasurer. It was stated therein that to the best of the plaintiff's knowledge and belief all of the employees to whom the bond would be made applicable had always performed their duties faithfully; that no act had come to the knowledge of plaintiff which indicated that they were unreliable, deceitful, dishonest, or unworthy of confidence; and that no losses had been incurred during the preceding five years which were attributable to any of the causes against which indemnity was to be provided. On May 3, 1933, the board of directors passed a resolution to renew the indemnity with the defendant. An identical application was submitted; it likewise was signed by Dunn as secretary-treasurer and the bond was similar to the former one except in amount. Due to the prevailing custom, usage, and practice, plaintiff knew that a written application was to be made for each bond and neither bond would have been executed without the application made in the name of the plaintiff, signed by one of its officers and containing the declarations and statements which were set forth. Prior to the time the first application was submitted, Dunn and two employees had embezzled funds of the corporation and they were then short in their accounts to the extent of $3,116.45. While the first bond was in force, they appropriated to their own use $22,568.27 belonging to the corporation and White, another employee, misappropriated

$75. Dunn and his confederates did not know of White's criminal acts, and, conversely, White had no knowledge of theirs. From May 3, 1933, until February 26, 1934, Dunn and his confederates embezzled $28,561.21, while White appropriated $1,830.25 to his own use. None of the officers or directors of the corporation, except Dunn, knew of the embezzlements until February 26, 1934. The losses were discovered on that date; notice was immediately given and formal claim followed in due time. Defendant denied liability and tendered back the premiums paid. The tender was renewed at the trial and refused.

The trial court determined that the defendant was liable under the first bond for the $22,568.27 and the $75 abstracted; that it was liable under the second bond for $20,000 of the amount embezzled by Dunn and his confederates and for the $1,830.25 embezzled by White. Judgment was rendered for the sum of $44,473.52. This appeal followed.

■■ It is argued with insistence that the defendant is absolved from liability for the losses in question because false statements were made in the applications with respect to the honesty and faithfulness of the employees to be insured. Each application preceded the bond to which it referred but was not a part of it. The bond made no reference to the application. The applications fail to contain a provision making the statements contained therein warranties and there is nothing which indicates that the parties intended that they should have that effect. It is well settled that in such circumstances the statements constitute representations as distinguished from warranties. Guthrie Nat. Bank v. Fidelity & Deposit Co., 14 Okl. 636, 79 P. 102; Fidelity & Deposit Co. v. Guthrie Nat. Bank, 17 Okl. 397, 87 P. 300; Maryland Casualty Co. v. First State Bank, 101 Okl. 71, 223 P. 701; Moulor v. American Life Ins. Co., 111 U.S. 335, 4 S.Ct. 466, 28 L.Ed. 447; Phœnix Mut. Life Ins. Co. v. Raddin, 120 U.S. 183, 7 S.Ct. 500, 30 L.Ed. 644; Ætna Life Ins. Co. v. Moore, 231 U.S. 543, 34 S.Ct. 186, 58 L.Ed. 356; Sentinel Life Ins. Co. v. Blackmer (C.C.A.) 77 F.(2d) 347. The mere falsity of a representation in such an application will not relieve an insurer of liability. It must be shown that it relates to a matter material to the risk; that it is false; that it was knowingly made with intent to deceive or that it was made in such disregard of its truth or falsity as to amount to fraud. Continental Casualty Co. v. Owen,

38 Okl. 107, 131 P. 1084; Mutual Life Ins. Co. v. Morgan, 39 Okl. 205, 135 P. 279; Reserve Loan Life Ins. Co. v. Isom, 70 Okl. 277, 173 P. 841; New York Life Ins. Co. v. Stagg, 95 Okl. 252, 219 P. 362; New York Life Ins. Co. v. Clark, 110 Okl. 31, 235 P. 1081; Sentinel Life Ins. Co. v. Blackmer, supra; 3 Cooley's Insurance (2d Ed.) 1901.

■ We come now to consider whether these representations were of that kind and therefore preclude recovery on the bonds. Dunn was the plaintiff's agent and he knew of the embezzlements in which he and his confederates had engaged; but no officer or other agent with authority had actual knowledge of them. Was his knowledge imputed to his principal? A corporation is charged with knowledge of all material facts of which its officer or agent receives notice or acquires knowledge while acting in the course of his employment and within the scope of his authority, because it is presumed in law that such facts will be disclosed to the principal. That rule rests upon considerations of sound policy and imperative expediency; otherwise rights would frequently be impaled upon uncertainty and instability. The innumerable cases in which the doctrine has been reaffirmed and applied to varying facts, need not be cited. But it bears a well-settled exception. It is that if in the course of his employment the agent acts for his own benefit and to defraud his principal, the latter is not charged with constructive knowledge of the uncommunicated facts in the transaction since it is manifestly essential to the existence of such a fraud that the agent conceal the facts and consequently the ordinary presumption that he will communicate to his principal all facts concerning the business does not arise. The adverse character of his interest takes the case out of the general rule. American Surety Co. v. Pauly, 170 U.S. 133, 18 S.Ct. 552, 42 L.Ed. 977; American Nat. Bank v. Miller, 229 U.S. 517, 33 S.Ct. 883, 57 L.Ed. 1310; Thomson-Houston Electric Co. v. Capitol Electric Co. (C.C.) 56 F. 849; Hudson v. Randolph (C.C.A.) 66 F. 216; Bank of Overton v. Thompson (C.C.A.) 118 F. '798; Union Cent. Life Ins. Co. v. Robinson (C.C.A.) 148 F. 358, 8 L.R.A.(N.S.) 883; Interstate Nat. Bank v. Yates Center Nat. Bank (C.C.A.) 245 F. 294; Ætna Casualty & Surety Co. v. Local Bldg. & Loan Ass'n, 162 Okl. 141, 19 P.(2d) 612, 86 A.L.R. 526; Detroit Piston Ring Co. v. Wayne County & Home Sav. Bank, 252 Mich. 163, 233 N.W. 185, 75 A.L.R. 1273; American Sash & Door Co. v. Commerce

Trust Co. (Mo.App.) 25 S.W.(2d) 545; Restatement, Agency, § 282; 3 Fletcher on Corporations, § 826; 2 Pomeroy's Eq.Jur. (4th Ed.) § 675. There is another group of cases holding that the rational basis upon which the exception rests is that the agent acts outside the scope of his agency and for that reason his knowledge cannot be imputed to the principal. Allen v. South Boston R. Co., 150 Mass. 200, 22 N.E. 917, 5 L.R.A. 716, 15 Am.St.Rep. 185; Keyworth v. Nevada Packard Mines Co., 43 Nev. 428, 186 P. 1110; Texas Pac. Coal & Oil Co. v. Belcher (Tex.Civ.App.) 265 S.W. 1081; Thomson-Houston Electric Co. v. Capitol Electric Co. (C.C.A.) 65 F. 341; Schneider v. Thompson (C.C.A.) 58 F.(2d) 94. Regardless of the divergence of reason underlying the exception, the courts in both groups agree that under such circumstances the knowledge of the agent is not imputed to the principal. If before his position has been changed, the principal learns the facts and knowingly retains a benefit obtained through the acts of the agent which he would not have received otherwise, he cannot escape responsibility. United States v. Carbon County Land Co. (C.C.A.) 46 F.(2d) 980, affirmed 284 U.S. 534, 52 S.Ct. 232, 76 L.Ed. 469; General Paint Corporation v. Kramer (C.C.A.) 57 F.(2d) 698; Restatement, Agency, § 282, supra. But no such situation is presented here because the corporation changed its position before learning the facts. It surrendered its protection under the prior bond.

Defendant asserts and seeks to invoke a qualification to the exception just discussed. It has been held that even though an agent acts in his own interest and to defraud his principal, knowledge is imputed if he is the sole representative of a corporate principal in the transaction. Atlantic Cotton Mills v. Indian Orchard Mills, 147 Mass. 268, 17 N.E. 496, 9 Am.St.Rep. 698; National Bank v. Whitney, 40 Cal.App. 276, 180 P. 845; Emerado Farmers' Elevator Co. v. Farmers' Bank, 20 N.D. 270, 127 N.W. 522, 29 L.R.A.(N.S.) 567; Kean v. National City Bank (C.C.A.) 294 F. 214; Bosworth v. Maryland Casualty Co. (C.C.A.) 74 F.(2d) 519; First Nat. Bank v. Blake (C.C.) 60 F. 78. See, also, Ætna Casualty & Surety Co. v. Local Bldg. & Loan Ass'n, supra. But that limitation is without application here because Dunn was not the sole representative of the corporation. It had a board of directors which acted from time to time. The board acted in respect of the bonds in question; it determined to secure them and Dunn's act in submitting the application followed in a subordinate and ministerial manner.

[5] It is further argued that in view of the prevailing custom, practice, and usage, plaintiff knew that the applications were being made; that retention of the bonds with that knowledge constituted constructive knowledge of the representations concerning the employees; and that plaintiff cannot now assert that they were made without authority. The fallacy of the argument lies in the failure to distinguish between knowledge of the representations and knowledge of the antecedent facts which rendered the representations untrue. Dunn acted adversely to his principal in embezzling its funds and in its behalf in submitting the applications. Compare Gordon v. Continental Casualty Co., 319 Pa. 555, 181 A. 574. His natural motive and incentive to withhold knowledge of the facts respecting his criminal conduct continued throughout the existence of the shortage. It cannot be assumed that he made disclosure of his criminal acts after they were committed and while the shortage existed. It is manifest that plaintiff was not charged with constructive knowledge of the acts of embezzlement intermediate their commission and discovery; and that period included the submission of the applications. Plaintiff had knowledge of the representations from the time they were made, but at the time the applications were submitted it had neither actual nor constructive notice of the previously committed criminal acts which made the representations false. We therefore, find no warrant for the conclusion that these representations were knowingly untrue or made with such utter disregard of the facts as to amount to a fraud on defendant.

The remaining contention which merits attention is that, if defendant is liable, its liability cannot exceed $30,000. The argument grows out of a supersedeas rider attached to the second bond in which it was provided that losses sustained during the existence of the first bond and discovered more than two years after its termination should be recoverable under the second, but that the total liability should not exceed the amount of the larger bond. The first bond was the larger and its maximum indemnity for embezzlements committed by Dunn and the three employees in question was $30,000. The rider has exclusive reference to losses which were suffered during the existence of the first bond and discovered more than

**18**

two years after its termination. The limitation is a part of the rider and is likewise limited to losses of that kind. There are no such losses here. All of these losses were discovered less than two years after the first bond was terminated and for that reason no recovery is sought under the terms of the rider. Accordingly, the rider, including its fixation of maximum recovery, has no effect here. We so held quite recently in construing an appended rider identical in all material respects with this one. Hartford Accident & Indemnity Co. v. Collins-Dietz-Morris Co. (C.C.A.) 80 F. (2d) 441.

The judgment is affirmed.