## MASSACHUSETTS BONDING & INS. CO. v. HUDSPETH.

## In re WARD–GARRISON HOTEL CORPORATION.

### No. 10955.

Circuit Court of Appeals, Eighth Circuit.

Jan. 28, 1938.

Rehearing Denied Feb. 12, 1938.

468

James B. McDonough, of Fort Smith, Ark., for appellant.

Joseph M. Hill, of Fort Smith, Ark. (Henry L. Fitzhugh and John Brizzolara, both of Fort Smith, Ark., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a judgment based upon a verdict directed in favor of the appellee, plaintiff below, in an action brought to recover on a fidelity bond. We shall re-

fer to the parties as they were designated in the lower court.

The Ward-Garrison Hotel Corporation on August 12, 1935, filed its petition for reorganization under section 77B of the National Bankruptcy Act, 11 U.S.C.A. § 207 and note. On approval of the petition, the court ordered the debtor to continue temporarily in possession of its property and to operate its business until the further order of the court. The order authorized the debtor "to deposit all moneys now in the possession of the debtor as well as all moneys that may hereafter come into the possession of the debtor in City National Bank of Fort Smith, Arkansas, which moneys may be withdrawn by the debtor as required in order to so carry on its business, on check, draft or order duly signed by such officers and/or agents of the debtor as are now authorized to do so by existing resolutions of the Board of Directors of the debtor, provided, however, that no such checks shall be countersigned by a referee." The debtor was ordered to close its present books of account as of the close of business on August 15, 1935, and to open new books of account as of the opening of business on August 16, 1935, and to cause to be kept therein due and proper accounts of the earnings, expenses, receipts, and disbursements of the debtor, and to preserve proper vouchers for all payments made. On September 11, 1935, the court continued in effect, until further order, the order leaving the debtor in possession. It also then ordered that Perry Keith, the manager of the hotel, be paid a salary of $250 a month for his services, and that M. M. Hord be paid a salary of $125 a month for her services as auditor and bookkeeper (in addition to accommodations furnished them), and that no other salaries should be paid to any officer or director of the debtor without the approval of the court first obtained.

The bond forming the basis of this action was first executed November 16, 1933, to the Ward Hotel Company of Fort Smith, Ark., as employer, and by it the defendant obligated itself to pay "such direct loss as the Employer shall have sustained * * * through larceny or embezzlement committed by any employee or employees named in the schedule attached hereto." On November 16, 1935, while the debtor was in possession of its property and business under order of the bankruptcy court, the bond, by endorsement, was amended as to obligee to read, "Ward Garrison Hotel Corporation, Or-mand Griffin, President." This endorsement reads as follows:

"Endorsement

"Attached to and forming part of Bond No. S-31616 issued by the Massachusetts Bonding and Insurance Company on behalf of various employees in favor of Ward Hotel Company, et al.

"In the amount of $——— Dated———

"It Is Understood And Agreed That effective the 11th day of November 1935, the name of the Employer (Obligee) in the annexed bond is hereby amended to read as follows: 'Ward Garrison Hotel Corporation, Ormand Griffin, President.'

"Except as herein specifically modified, the conditions, provisions and limitations of said bond shall continue unchanged."

This was signed by the defendant, acting through its vice president and assistant secretary.

The schedule of employees affixed to the bond effective November 11, 1935, included Margaret M. Hord, auditor, for an amount of $3,000.

On April 2, 1936, the bankruptcy court appointed Cooper Hudspeth as trustee of the hotel corporation, and he thereafter qualified. By order of his appointment he was directed, subject to the control of the judge of the court, to operate the business of the debtor, and as incident thereto to employ and discharge help, purchase supplies, and make all necessary disbursements.

Margaret M. Hord died April 7, 1936, and on that same date a deputy United States marshal, pursuant to directions of plaintiff, took possession of the cash and records that had been in Mrs. Hord's possession. A subsequent audit by an accountant disclosed a shortage of $4,015.61. This shortage was determined by charging Mrs. Hord with the balance on hand at the close of business on November 30, 1935, the date of the last previous audit made by this same accountant, plus the total receipts shown by the books up to April 7th, and crediting her with the amount shown by the books to have been expended and the balance actually remaining on hand. When the records and books that had been in Mrs. Hord's possession were taken over, there were found in the room occupied by her as an office certain memoranda, checks, and drafts, and these were placed in the cash box where they were found by the accountant, among them being certain I.O.U.'s signed by Ormand Griffin. These memo-

randa, checks, and drafts amounted in the aggregate to $6,789.88. There was also found to be a deposit of $2,000 made in the bank to the hotel's credit on December 7, 1935, which was not reflected in the hotel books as kept by Mrs. Hord, but it appeared that the deposit was made by her, the deposit ticket being in her handwriting and being made up of two $1,000 checks payable to her order.

From a study of the accounts and the exhibits, it appeared, and the accountant so testified, that Mrs. Hord had made a practice of paying out cash from the cash box for Mr. Griffin, without having deposited it in the bank or having made out a voucher for its disbursement. Deducting the $2,000 from the total of $6,789.88 left a balance of $4,789.88. There still remained a difference between the shortage reflected by the bank account and the total of the memoranda, checks, and drafts of $774.24, which was not explained. In any event, a shortage in excess of $3,000, the amount of the bond applicable to Mrs. Hord's defalcations, is claimed by plaintiff to be established.

The evidence showed that Griffin often drew checks or customer's drafts on a bank of Fort Smith, and that Mrs. Hord had instructed the bank to notify her if his account had not sufficient funds to meet the checks, which frequently occurred. She would then, as above noted, furnish the money to the bank to cover the checks.

On April 14, 1936, the shortage was reported by the accountant to plaintiff, and on April 18, 1936, he wrote the bonding company, reporting the loss and asking that a copy of the bond be furnished him. Formal proof of loss was mailed to the company on May 18th, and the action was commenced July 23, 1936, after counsel for the defendant had notified plaintiff that the company denied liability.

At the close of all the evidence, both parties moved for a directed verdict and the court granted the motion of the plaintiff. On this appeal this action of the court is challenged on a number of grounds, which may be in substance stated as follows: (1) The memoranda, checks, and drafts found in Mrs. Hord's room were not sufficient proof of a shortage; (2) the accountant's item "Cash Advanced to Guests" was erroneously listed as a disbursement; (3) there was no loss within the meaning of the bond because the money was received by Griffin, who was not covered by the bond; (4) Griffin being the obligee named in the bond, the defendant was not liable for misappropriations by him; (5) there was no evidence that the money was taken without the consent or against the will of the owner or custodian; (6) an annual audit of the accounts of each employee had not been made as required by the terms of the bond as a condition precedent to right of recovery; (7) the bond did not cover the debtor in bankruptcy, but inured only to the corporation; (8) the employer having failed to give immediate notice on discovery of the acts of Mrs. Hord, plaintiff was not entitled to recover; (9) the acts of Mrs. Hord did not amount to larceny or embezzlement as the terms were used in the bond.

In the final analysis, the only question presented on this appeal, is the sufficiency of the evidence to sustain the verdict as directed by the court and the judgment entered thereon. In considering this question, we shall assume without deciding that defendant did not waive its right to have the issues submitted to a jury by having itself moved for a directed verdict. Chicago, M., St. P. & P. R. Co. v. Flanders, 8 Cir., 56 F.2d 114. It claims that its motion was more than a mere request for a peremptory instruction. In considering whether there was any substantial evidence tending to sustain defendant's defense, we shall consider the evidence in the light most favorable to it. Skaggs Safeway Stores v. Dunkle, 8 Cir., 49 F.2d 169; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720.

Defendant erroneously assumes that the accountant based his testimony regarding the shortage upon the memoranda, checks, and drafts, including the I.O.U.'s by Griffin, found in the room in which Mrs. Hord kept the books of the hotel company, but the accountant found a shortage without reference to these documents. He determined this shortage by the very simple process of taking the difference between the balance which the books showed should be on hand and the actual balance on hand on April 7. The evidence respecting these memoranda, checks, drafts, and I.O.U.'s was not for the purpose of establishing the amount of the shortage, but for the purpose of showing that Mrs. Hord had been misapplying or embezzling funds. Evidence other than that of the accountant showed without dispute that Mrs. Hord handled the money after it had been received from the employees of the hotel, who received it from customers in the course of business,

and they reported the amounts to her, so that the shortage occurred after she received the money.

In the statement of account prepared by the accountant, an item of $4,925.70 was shown as a disbursement, and defendant contends that this should be listed as an asset. Defendant confuses his debits and credits. Both disbursements and cash on hand on April 7th are credited in favor of Mrs. Hord, and the same balance will result, regardless of whether this item is classified as disbursements or cash on hand. The balance sheet of April 7, 1936, had in it as an asset an item of "Guest Accounts," in the sum of $2,278.95, and defendant urges that this is the same thing as the item of $4,925.70, but this larger item appears in a receipt and disbursement statement covering a period from December 1, 1935 to April 7, 1936, while the $2,278.95 item was the balance on that particular day. There is no inconsistency in the two statements.

■ In discussing this phase of the case, defendant urges the presumption of innocence and good faith. This is a civil case and not a criminal prosecution, and in a civil case such a presumption is a burden of proof presumption which vanishes in the face of evidence. Wiget v. Becker, 8 Cir., 84 F.2d 706. Ultimately the question to be determined is whether there was substantial evidence to sustain the judgment.

■ The contention that no loss was sustained by the insured because Griffin could be compelled by the trustee, through the summary process of the bankruptcy court, to restore the money which he had wrongfully received from Mrs. Hord, cannot be sustained. Assuming, without deciding, that such remedy existed, plaintiff was not required to pursue that course, and the loss occurred when the hotel company was deprived of its property. It was therefore not incumbent upon plaintiff to exhaust its remedies against the defaulting employee as a condition precedent to the maintenance of this action against the company. Fitchburg Savings Bank v. Massachusetts Bonding & Ins. Co., 274 Mass. 135, 174 N.E. 324, 73 A.L.R. 274; First Natl. Bank v. U. S. F. & G. Co., 150 Wis. 601, 137 N.W. 742; Champion Ice Mfg. & Cold Storage Company v. American Bonding & Trust Co., 115 Ky. 863, 75 S.W. 197, 103 Am.St.Rep. 356.

■ As has been observed, in the bond as amended by the endorsement, effective No-vember 11, 1935, the obligee was described as "Ward Garrison Hotel Corporation, Ormand Griffin, President," and defendant urges that Griffin was obligee in the bond, and, if he abstracted funds, the bond did not cover such loss. After August 12, 1935, the hotel property and business was in the hands of the Ward Garrison Hotel Corporation as trustee, or in "a position analogous to that of a receiver in equity." In re Avorn Dress Co., Inc., 2 Cir., 78 F.2d 681, 683; In re Avorn Dress Co., Inc., 2 Cir., 79 F.2d 337. In that capacity, and not otherwise, it was Mrs. Hord's employer. It was in that capacity that the hotel company renewed the bond on November 16, 1935. The fact that at that time the parties used the words "Ward Garrison Hotel Corporation, Ormand Griffin, President," to describe the employer, is not here material. No claim is made by the defendant that it was misled, or that it did not know the capacity in which the hotel company was then functioning. It is made clear by the orders of the bankruptcy court that the debtor corporation, and not Griffin, was the trustee. In fact, so far as he individually was concerned, he was given no authority whatever, nor does his name seem to be mentioned by the bankruptcy court. Mrs. Hord was required to deposit the funds of the estate in a specified bank and to pay out only by check upon proper voucher. This was the standard by which her conduct was to be measured in this regard, and any misconduct or wrongful acts of Griffin did not excuse her failure properly to conserve and deposit the funds of the estate as required by the orders of the bankruptcy court.

■ It is further contended that the employer had knowledge of, and therefore consented to, the appropriation of these funds. This is based upon the assumption that Griffin must have received the money, and that Keith, the manager, knew the method employed by the bank and Mrs. Hord in paying Griffin's checks. The knowledge of Griffin, however, could not be imputed to the corporation nor to the court, because he was a party to the fraud. American Surety Co. v. Pauly, 170 U.S. 133, 18 S.Ct. 552, 42 L.Ed. 977; Fidelity & Deposit Co. v. Courtney, 186 U.S. 342, 22 S.Ct. 833, 46 L.Ed. 1193. The bond contains provision that, "If the Employer be a corporation, the act or knowledge of any officer or director thereof, not in collusion with such defaulting Employee, shall be deemed the act or knowledge of the Employer within the

meaning hereof." This contractual exception prevents Griffin's guilty knowledge from being imputed to the corporation, and, even without it, it would not be charged with notice where he was acting for his own benefit, or was a party to the fraud. Maryland Casualty Co. v. Tulsa Industrial Loan & Investment Co., 10 Cir., 83 F.2d 14, 105 A.L.R. 529. The provision imputing to the corporation knowledge of an officer would not include such knowledge as Keith may have had. The evidence does not disclose that he knew that Mrs. Hord was making any improper use of the funds of the corporation. There was evidence that, when the assistant cashier or other employee of the bank would call Mrs. Hord to tell her that Griffin had drawn a check and there were no funds on deposit to meet it, and she was out, they would talk to Keith and tell him of it. Later the check would be paid. The evidence establishes the fact that the payments were made by Mrs. Hord, but this evidence falls far short of establishing that Keith knew she was taking the money from the hotel cash. It must be borne in mind, too, that this hotel company was not a going concern, but was being operated by the court, and it may well be doubted whether all the rules applicable to a solvent going concern, governing the relationship between it and its employees, are to be extended to a corporation undergoing reorganization under section 77B. Quite aside from this, however, defendant can claim no benefit from the rule imputing notice or knowledge of its officers or agents to the corporation. There is no evidence that any one else had knowledge that Mrs. Hord was misapplying funds.

■ The bond contains provision that the employer should make a careful inspection and audit of the books and accounts of each employee covered by it at least once in each twelve months, and the defendant contends that there was no evidence that this provision of the bond had been complied with. This bond, by reason of the endorsement, was made effective as of date November 11, 1935, and it embodied by appropriate reference the other provisions and conditions of the bond without modification. This in effect was a new bond, as we have already pointed out, taken out by the corporation while it was acting as trustee. The accountant who audited the books and discovered the shortage testified that he had audited the books of the corporation on August 15, 1935, and again on November 30, 1935.

He was not cross-examined, and this evidence stands undisputed. The doctrine of Employers' Liability Assur. Corporation v. Wasson, 8 Cir., 75 F.2d 749, relied upon by defendant is not here applicable because there was no breach of the provision of the new bond, and there is no claim that the loss occurred prior to the issuance of the new bond. Neither is there any basis for the claim that the premium on the bond was not paid, as an agent of the defendant testified that it had been paid.

■ Defendant contends that the bond did not cover the loss suffered by the debtor in bankruptcy, but insured only the corporation. As has already been observed, it was the corporation as trustee that renewed the bond. The bond contains no warranty as to the interest insured or covered, and there is no claim of fraud or misrepresentation. There is no merit to this contention.

■ The bond contains provision that, "Immediately after becoming aware of any act or omission of any Employee' which may be made the basis of a claim hereunder the Employer shall notify the Surety at its Home Office." It is urged that this provision was not complied with because it is said that Griffin had such knowledge; but we have already pointed out that the corporation was not bound by the knowledge that Griffin had. By the very terms of the bond, it was only the knowledge of such officers as were not in collusion with the wrongdoer that bound the corporation. No other officer or employee of the corporation is shown to have been aware that Mrs. Hord was misappropriating the funds of the hotel.

■ It is finally urged with great earnestness that the evidence did not prove an embezzlement by Mrs. Hord. The offense of embezzlement is purely statutory. Hughes v. United States, 8 Cir., 4 F.2d 686. In determining whether embezzlement by Mrs. Hord was proved, recourse must be had to the statutes of Arkansas, because the corporation and its employees all lived and operated in that state. Whether the acts of misappropriation shown by the evidence constituted embezzlement must be determined by a consideration of the local statutes as construed by the Supreme Court of Arkansas. Section 2500, Crawford & Moses' Digest 1921, provides as follows: "If any clerk, apprentice, servant, employee, agent or attorney of any private person, or of any copartnership, except clerks, apprentices, servants and employees within

the age of sixteen years, or any officer, clerk, servant, employee, agent or attorney of an incorporated company, or any person employed in any such capacity, shall embezzle or convert to his own use, or shall take, make away with, or secrete, with intent to embezzle or convert to his own use, without the consent of his master or employer, any money, goods, or rights in action, or any valuable security or effects whatsoever belonging to any other person, which shall have come to his possession, or under his care or custody, by virtue of such employment, office, agency or attorneyship, he shall be deemed guilty of larceny, and on conviction shall be punished as in case of larceny."

The Supreme Court of Arkansas has held that embezzlement is the fraudulent appropriation to one's own use of property of another intrusted to his care (Arnett v. State, 188 Ark. 1106, 70 S.W.2d 38), and that an essential element of the crime of embezzlement is a felonious intent on the part of a fiduciary to convert the property of another to his own use. It has been held by that court that, where there has been a wrongful conversion of a fund, a jury may infer a criminal intent from the act itself, and that proof of concealment of the fund is unnecessary. Gurley v. State, 157 Ark. 413, 248 S.W. 902. In Fleener v. State, 58 Ark. 98, 23 S.W. 1, the same court, under the circumstances in that case, said that there must be some degree of concealment or acts misleading the master. The statements, however, are not irreconcilable. If the facts show a wrongful conversion, the requirements of the statute may be satisfied, while, if the acts are equivocal because of the nature of their relationship, or for any other reason, some act of concealment or other act of deception or fraud may be necessary to establish the criminal intent.

In the instant case, the memoranda, drafts, checks, I.O.U.'s and other papers admitted in evidence have a bearing on the intent of Mrs. Hord and cannot be disregarded. Some of them may be referred to by way of illustration.

Exhibit G—1 is a slip of paper bearing the following: "12-4-35. O.G.—L.R. 50.-00."

Exhibit G—3 is a slip of paper with the following on it: "12–10–35—O.G. to take up draft 100.00. Wilson—Draft."

Exhibit G—15 is an envelope bearing the following: "1/19/36. The Ward Hotel, Fort Smith, Ark. O.G. —— 50.00."

Exhibit G—31 is as follows:

"Paid out

To Account of
O. Griffin                         Apt. ——

| Date | Item | Amount | Total |
|------|------|--------|-------|
| 3/8/6 | St. Louis | | 100.00 |

MH                         Ormand Griffin.
Remarks
Form 11—Sherway—Chicago."

There are other "paid out" slips and other memoranda similar to these. For the most part these items consist of checks and customer's drafts all drawn by Ormand Griffin upon the City National Bank of Fort Smith, Ark. Some of the exhibits are duplicate deposit slips of Ormand Griffin in the same bank, crediting him with deposits of various sums. The various items run from December 4, 1935, to March 30, 1936. Carl Knerr, who at plaintiff's request went to the hotel the day of Mrs. Hord's death, testified that he found these exhibits loose on the closet shelf in the room used by Mrs. Hord as her accounting office at the hotel. The evidence shows that at least part of these checks and drafts were paid by Mrs. Hord. She had instructed the bank to call her and tell her when they had a check of Griffin, if his funds were insufficient to meet it. She would furnish the money to pay the checks and drafts, and as to practically all of the checks and drafts Griffin's bank account was insufficient to meet them.

There was no objection to the admissibility of these exhibits. The question argued by defendant is whether they proved anything. Standing alone, they might not have much evidentiary value, but this evidence has a bearing on the question of Mrs. Hord's intent, and they are some evidence of concealment. The question of their admissibility is not presented.

It is claimed by defendant that the shortage of $4,798.88, as indicated by the memoranda, checks, and drafts, is excessive because included therein were items prior to December 4, 1935, but these exhibits were not the evidence which established the shortage. They were explanatory as showing the method of appropriating the funds and as bearing on the question of intent. In view of the evidence that Griffin was using Mrs. Hord to take care of his overdrafts, that she was short in her accounts, that there is other positive evidence of a cash shortage and no evidence of any other source from which Mrs. Hord could raise

474

the money for Griffin, the exhibits could properly be considered as showing the use made of the money otherwise shown to be short.

The evidence was without dispute that Mrs. Hord was actually short in cash more than $1,000 over the amount covered by defendant's bond. The orders of the court made it her duty to pay necessary current expenses of operating the business of the hotel. It was her duty to preserve all other cash coming into her hands for the proper execution of the trust and to deposit it in the City National Bank. Full credit has been given her for expenditures on account of operating expenses, and no claim is made that any expenses could have been incurred or paid which have not been taken into account. In this condition of the evidence we must conclude either that she used the money personally or that she turned it over to Griffin or someone else. In either event, under the Arkansas statute as construed by the Supreme Court of that state, that would be embezzlement, whether concealed or unconcealed. By comparing the hotel records with the bank account, the shortage was discoverable, but she was in charge of the hotel records, and, of course, kept her peculations secret. To conversion was added concealment. The evidence shows a fraudulent, dishonest appropriation within the decisions of the Supreme Court of Arkansas.

On the entire record, we are satisfied that the court committed no error in directing the jury to return a verdict in favor of the plaintiff. The judgment appealed from is therefore affirmed.